° DUEBER WATCH–CASE MANUF'G CO. v. E. HOWARD WATCH & CLOCK CO. et al.

(Circuit Court of Appeals, Second Circuit. March 5, 1895.)

**1. MONOPOLIES AND COMBINATIONS IN RESTRAINT OF TRADE—ANTI-TRUST LAW OF 1892.**

An action was brought in the United States circuit court for the Southern district of New York by a manufacturing company against numerous competitors, in various states, alleging the formation of a combination, and an attempt to create a monopoly, "in violation of the statutes of this state and the United States," whereby plaintiff's business was injured. The formation of the combination was laid on and prior to November 16, 1887, but it was alleged that after the passage of the act of congress of July 2, 1890, defendants ratified, renewed, and confirmed their previous contracts, combinations, etc. Judgment was demanded for treble damages "under and by virtue of the statute." Plaintiff was not a resident of the district where the action was brought, and the case was heard upon the demurrer of a defendant who was also a nonresident, but was "found" within the district; thus making a case in which jurisdiction is expressly conferred by section 7 of the said act of July 2, 1890. The demurrer was sustained, and in all the assignments of error it was contended that the facts charged in the complaint made out a case under that act. *Held,* that the action must be deemed to be founded upon the said act of July 2, 1890.

**2. SAME.**

In an action brought by a manufacturer of watch cases against numerous other manufacturers thereof, residing in various states, to recover treble damages under the act of congress of July 2, 1890 (26 Stat. 209), prohibiting unlawful restraints and monopolies of interstate commerce, the complaint alleged that the plaintiff operated an extensive factory, first in Kentucky and afterwards in Ohio; that previous to November 16, 1887, it sold all its goods to a great number of dealers "throughout the United States and Canada"; that prior to that date defendants had agreed with each other to maintain arbitrary and fixed prices for their watch cases; that, for the purpose of compelling plaintiff to join with them therein, defendants on said date mutually agreed that they would not thereafter sell any goods to persons who bought or sold goods manufactured by plaintiff; that they caused notice thereof to be served upon the many dealers

in such goods throughout the United States and Canada, who had formerly dealt in plaintiff's goods, whereupon many of such dealers withdrew their patronage from plaintiff; that after the passage of the act of July 2, 1890, defendants ratified, renewed, and confirmed their previous agreements, and served notice of such ratification upon all said dealers in plaintiff's goods, whereby said dealers were compelled to refuse to purchase plaintiff's watch cases. *Held*, that the complaint failed to state a cause of action under the statute; Lacombe, Circuit Judge, holding that no monopolizing or combination to monopolize interstate commerce, contrary to the second section of the act, was shown, for the reason that the allegations did not preclude the inference that each defendant may have sold his entire product in the state where it was manufactured; and that the contracts did not produce an unlawful restraint of trade, under the first section, because the combination and agreement to fix arbitrary prices did not appear to include all manufacturers of watch cases, but was only a partial restraint in respect to an article not of prime necessity, and therefore came within the recognized limits of lawful contracts; and that the further agreement not to sell to customers of plaintiff was a lawful means of enlarging and protecting the business of the defendants. Shipman, Circuit Judge, concurring on the more technical ground that the acts of the defendants, whether viewed as an attempt to create a monopoly or as a contract in restraint of trade, were not shown to concern interstate commerce, because there were no allegations showing the residence of any dealers who withdrew their patronage from complainant, and it therefore did not directly appear that any of them resided outside of the state where plaintiff's goods were manufactured. Wallace, Circuit Judge, dissenting on the ground that the allegations were sufficient to show that the attempts to monopolize and restrain did operate upon interstate commerce; and that, while the contracts might not be unlawful in themselves, yet the purpose for which they were alleged to be made, namely, to compel plaintiff to join in the agreement for fixing arbitrary prices, and to injure and destroy its business if it refused to do so, was oppressive and unjust, and rendered the acts of defendants unlawful under both sections of the statute.

This was an action by the Dueber Watch-Case Manufacturing Company against the E. Howard Watch & Clock Company and numerous other individuals and corporations, to recover damages alleged to have been caused to plaintiff's business by the alleged unlawful acts and combinations of defendants. The case was first heard in the circuit court upon the demurrer of the E. Howard Watch & Clock Company to the first amended complaint, and the demurrer was sustained, the opinion of the circuit court therein being reported in 55 Fed. 851. A demurrer was afterwards sustained to the second amended complaint, but no opinion was written, and plaintiff now brings error to review this latter judgment.

Robert Sewell, for plaintiff in error.

Edward B. Hill and Elihu Root, for defendants in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The complainant corporation is a citizen of Ohio, the demurring defendant corporation a citizen of Massachusetts, engaged in the business of manufacturing and selling watch movements, and having a place of business in the city of New York, state of New York. Of the nineteen other defendants, ten are individuals whose citizenship is not set forth in the complaint. It is averred that they are engaged in business, two of them in New York City under one firm name, two others in

Philadelphia and New York City under another firm name, three others in the city of New York under another firm name, and three others in Cincinnati under still another firm name. The nine remaining defendants are corporations, two of them citizens of Massachusetts, two citizens of New York, two citizens of Connecticut, two citizens of Illinois, and one a citizen of Pennsylvania.

The complainant avers that plaintiff is a corporation duly created and existing under the laws of Ohio, and engaged in the business of manufacturing gold and silver watch cases. That at the times mentioned in the complaint it owned and operated an extensive factory at Newport, Ky., and subsequently at Canton, Ohio; that it maintained the same at great expense, and had the capacity to manufacture and offer for sale in the open market 25,000 watch cases per month. In the third paragraph it is averred "that prior to November 16, 1887, plaintiff had a ready market throughout the United States and Canada for all the goods it could manufacture, and in fact sold all of said goods to a great number of dealers therein throughout said territory, and thereby fully earned and realized to itself a substantial legitimate profit of at least $75,000 per annum." Next follow averments as to the incorporation and partnership of the several defendants, who, it is stated, are respectively engaged in the business of manufacturing or selling watches, watch cases, or watch movements. In the eighteenth paragraph it is averred that on or about November 16, 1887, the defendants, and others to plaintiff unknown, at and in the city of New York, mutually agreed together each for himself with all the others that "they would not thereafter sell any goods manufactured by them to any person, firm, association, or corporation whatsoever who thereafter should buy or sell any goods manufactured by this plaintiff." It is further averred that thereafter defendants caused notice of this agreement or compact to be given to the many dealers in watches, watch cases, and watch movements throughout the United States and Canada; and gave said notices to "many of the then and theretofore purchasers and dealers in plaintiff's goods manufactured as aforesaid"; whereupon a large number of such purchasers and dealers withdrew their patronage, and ceased thereupon entirely to purchase and deal in any wise in plaintiff's goods. The complaint further alleges that after said November 16, 1887, defendants refused to sell their goods to purchasers of and dealers in plaintiff's goods who had offered to buy defendants' goods, stating as the reason for their refusal that said dealers also bought and sold and dealt in plaintiff's watches, notifying such purchasers and dealers that if they would promise not to deal in plaintiff's goods, then, and so long as they kept such promise, they might purchase the goods of the defendants or either of them; otherwise not. In the twenty-third paragraph it is alleged that prior to November 16, 1887, the defendants had agreed among themselves, "and which said agreement has been in operation and effect between them ever since, that they would agree upon and agree to maintain an arbitrary fixed price to the public for all the goods manufactured by them, and in pursuance of said agreement the said defendants had agreed

upon an arbitrary price, and fixed the same for all the goods manufactured by them." The agreement of November 16, 1887, is alleged to be "in addition to and furtherance of said prior agreement, and made and entered into for the sole purpose of compelling this plaintiff to join with them in said first-named agreement." All these acts of defendants are alleged to have been done "for the purpose of establishing a monopoly in the supply of watches to the public, contrary to the policy of the law, and in violation of the statutes of this state and the United States, and to cut off this plaintiff from any participation in such business unless it joined in said illegal and vicious conspiracy, and the acts of defendants thereunder, in furtherance thereof, as alleged, and to crush competition, and enable the defendants to maintain the prices fixed as they pleased by them as aforesaid for their commodities with regard only to their private emolument and profit, contrary to the benefit of the public; the said defendants, by the said combination, conspiracy, and agreements and acts thereunder, maliciously intending to injure this plaintiff, and drive it out of business, and prevent it from selling its watch cases," etc. It is further alleged that "by the extended influence and power acquired by the combination over the trade" defendants forced and prevented persons from dealing with the plaintiff, or purchasing its goods, under the threat of a refusal themselves to deal with such purchasers; that said threats were effectual, and did prevent a great number of persons who otherwise would have purchased large quantities of the goods of the plaintiff from purchasing the same, and did effect in fact against the plaintiff a complete boycott and ostracism from the trade, and prevented the lawful and ordinary competition of business which plaintiff had a right to enjoy. The concluding paragraph of the complaint alleges that after the passage by congress of the act of July 2, 1890, "all the former purchasers and dealers in plaintiff's watch cases and other dealers in watch cases were, as plaintiff is informed and believes, ready and willing to buy large quantities of said plaintiff's goods, and this plaintiff would have regained all the business and the profits thereof whereof it had been deprived by the acts aforesaid of defendants; but that said defendants, after the passage of the said act of congress, ratified, confirmed, renewed, and continued the contracts, agreements, and combinations hereinbefore alleged, and in like manner, and with the same intention as hereinbefore alleged, served notices of their ratification, confirmation, renewal, and continuance of said agreements and combinations upon all said dealers in plaintiff's watch cases, whereby said dealers have continued to this day, forced by said renewed threats of defendants, and compelled thereby, and not otherwise, to refuse to purchase plaintiff's watch cases, or to deal anywise therein, whereby the said defendants illegally and maliciously damaged the plaintiff in the sum of $150,000." Judgment is demanded, not for the $150,000, but, "under and by virtue of the statute of the United States hereinbefore referred to, for three times the amount of damages so sustained by it in the premises, to wit, for the sum of $450,000."

The federal statute of July 2, 1890 (26 Stat. 209), declared upon in the complaint is entitled "An act to protect trade and commerce against unlawful restraints and monopolies." The relevant parts of this statute are as follows:

"Section 1. Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations is hereby declared to be illegal." [Then follow provisions declaring the act a misdemeanor, and providing for punishment.]

"Sec. 2. Every person who shall monopolize or attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states or with foreign nations shall be guilty of a misdemeanor." [Then follow provisions as to punishment therefor.]

"Sec. 7. Any person who shall be injured in his business by any other person or corporation by reason of anything forbidden or declared unlawful in this act may sue therefor in any circuit court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three fold the damages by him sustained and the costs of suit, including a reasonable attorney's fee."

This action is manifestly one under the act of July 2, 1890. It is brought in a district where neither the plaintiff nor the demurring defendant resides, but where the demurring defendant is found. In the face of a complaint so framed as to present a cause of action under the statute, a defendant, if "found" here, could not object to the jurisdiction. It is expressly given by the seventh section. It would be manifestly unfair to permit a plaintiff to bring a defendant into this court on a complaint declaring upon the statute, and thereafter, when such defendant has failed to question its jurisdiction under the statute, and has appeared generally in the case, to transform the cause of action into one at common law, and insist that defendant has waived any objection to the jurisdiction. Moreover, although the complaint contains allegations as to combinations and threats long prior to the passage of the act of 1890, the averment of pecuniary damage to the plaintiff, which is specified in the twenty-seventh or concluding paragraph, is averred to have been sustained in consequence of the "renewed threats" of defendants (that is, those renewed after the passage of the act), which compelled dealers to refuse to purchase plaintiff's watch cases or to deal in any wise therein. Moreover, judgment is demanded, not for plaintiff's actual damages, but for treble damages, "under and by virtue of the statute." The counsel for plaintiff in error asserts in his filed brief that "the action is founded solely upon the act of congress passed July 2, 1890, the [seventh] section whereof expressly provides that the circuit court of the United States shall have exclusive jurisdiction of such action." There are 23 separate assignments of error, in each and all of which it is contended that the facts charged in the complaint make out a case under the act of 1890. Therefore, unless the complaint sets forth a cause of action under the act of 1890, the demurrer should be sustained.

The only acts of defendants as to which plaintiff can in this action contend that they are "forbidden or declared to be unlawful by this act" are those done after its passage. They are set forth in the twenty-seventh paragraph, and are as follows: (1) Defend-

ants "ratified, confirmed, renewed, and continued" an agreement between themselves, that they would agree upon and agree to maintain an arbitrary fixed price to the public for all the goods manufactured by them. (2) They "ratified, confirmed, renewed, and continued" an arbitrary price, and fixed the same for all goods manufactured by them. (3) They "ratified, confirmed, renewed, and continued" an agreement that they would not thereafter sell any goods manufactured by them to any person, firm, association, or corporation whatsoever who thereafter should buy or sell any goods manufactured by the plaintiff. (4) They served notices of such ratification, confirmation, renewal, and continuance of these three agreements upon all those persons who were former dealers in plaintiff's watch cases. The remaining averments of the twenty-seventh paragraph refer not to defendants' acts, but to the consequences of those acts; the principal consequence being that the former purchasers and dealers in plaintiff's watch cases and other dealers in watch cases were compelled to refuse to purchase plaintiff's goods.

The question to be decided is whether these acts are within either the prohibition of the first section of the statute of 1890 as a contract or combination in "restraint of trade," or within the prohibition of the second section as a "monopolizing" or as an "attempt to monopolize." Whatever differences of opinion there may be as to the meaning of these words when used in this statute, there is and can be no dispute as to one qualification expressed in the act, —the trade or commerce restrained or monopolized or attempted to be monopolized must be interstate or international. The statute expressly so says, and, whatever its phraseology, it must be so construed if it is to stand, since it is only such trade and commerce that congress has authority to regulate. No monopolizing or attempt or combination or conspiracy to monopolize any part of such trade or commerce is set forth in the complaint. The several manufacturers defendant are charged with an attempt to secure to each of them a sale of his or its own products to the exclusion of those of the plaintiff, but there is nothing to show that each defendant does not sell his or its entire product in the very state where it is manufactured. The sale within a state of articles manufactured in the same state is no part of interstate trade or commerce. U. S. v. E. C. Knight Co. (Jan. 21, 1895) 15 Sup. Ct. 249. The circumstance that, after manufactured products are thus sold within the state, they may be again sold for introduction into another state, and thus become a subject of interstate commerce, does not change the situation, for it is only when' a commodity has begun to move as an article of trade from one state to another that commerce in that commodity between states has commenced. Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475. The complaint, therefore, fails to charge an offense against section 2 of the act of 1890.

The complaint alleges that the acts of defendants subsequent to July 2, 1890, have forced and compelled persons who theretofore dealt in plaintiff's goods to refuse to purchase the same, and avers that prior to November 16, 1887, plaintiff sold its goods to a

great number of dealers throughout the United States and Canada, plaintiff manufacturing such goods first in Kentucky, and afterwards in Ohio.  And plaintiff's counsel contends that this sufficiently charges such a restraint of interstate and international trade as is obnoxious to the first section of the statute.  The phrase used in the act of 1890, viz. "restraint of trade," is no new one.  It had theretofore been used by courts applying the doctrines of the common law in determining the validity of contracts.  It is to be presumed that the lawmakers, when they chose this phrase, intended that it should have, when used in the statute, no other or different meaning from that which had always been given to it in judicial decisions and in the common understanding.  The title indicates that the phrase is so used, for the act is described as one "to protect trade and commerce against unlawful restraints and monopolies"; and, though the title to an act cannot control its words, it may furnish some aid in showing what was in the mind of the legislator.  U. S. v. Palmer, 3 Wheat. 610.  The "restraint of trade" which is obnoxious to the provisions of the first section must be of such kind as was, before the passage of the act, recognized as unlawful.  In re Greene, 52 Fed. 104; U. S. v. Trans-Missouri Freight Ass'n, 58 Fed. 58, 7 C. C. A. 15.  It may be assumed that the total amount of any given commodity which will be purchased by a community is limited, and when several sellers of such commodity enter into a combination in the form of a partnership, and by ingenious advertising, or by the devices of business competition, or by the offer of favorable terms to buyers, enlarge their own trade in such commodity, they restrain to some extent the trade of one or more of their competitors therein.  But no one, not even the plaintiff in error, contends that the statute forbids any such acts, although, if the words be taken with absolute literalness, the phrase "restraint of trade" is broad enough to cover them.  A most elaborate discussion of the meaning of this phrase "restraint of trade," with a careful review of all the leading authorities bearing upon the question, is found in the opinion of the United States circuit court of appeals for the Eighth circuit in U. S. v. Trans-Missouri Freight Ass'n, 58 Fed. 58, 7 C. C. A. 15.  The conclusion reached by that court—and on that branch of the case there was no dissent—is that where it is a question as to private parties engaged in private pursuits, and not dealing in staple commodities of prime necessity, "it is not the existence of the restriction of competition, but the reasonableness of that restriction, that is the test of the validity of contracts that are claimed to be in restraint of trade." And that "contracts made for a lawful purpose, which were not unreasonably injurious to the public welfare, and which imposed no heavier restraint upon the trade than the interest of the favored party required, had been uniformly sustained, notwithstanding their tendency to some extent to check competition."  A like statement of the law is found in Navigation Co. v. Winsor, 20 Wall. 64, 66, where the supreme court holds that "an agreement which operates merely in partial restraint of trade is good, provided it be not unreasonable, and there be a consideration to support it.

In order that it may not be unreasonable, the restraint imposed must not be larger than is required for the necessary protection of the party with whom the contract is made."

It remains only to inquire whether the contract or combination set out in the complaint is in restraint of interstate or international trade in the sense in which the phrase· "restraint of trade" is used in the act of 1890. The first alleged unlawful action of defendants charged upon them subsequent to the passage of the act is a renewal and confirmation of an agreement among themselves to "maintain an arbitrary fixed price to the public for all the goods manufactured by them," and a carrying out of such agreement by thus fixing and maintaining a price. The goods in question are not articles of prime necessity, as were the flour, coal, and other staple commodities referred to in many·of the cases cited upon the argument; nor were the manufacturing defendants engaged in any public or quasi public business, as were the railroads or the gaslighting companies referred to in other cases. Each one of the defendants had an undoubted right to determine for himself the price at which he would sell the goods he made, and he certainly does not lose that right by deciding to sell them at the same price at which a dozen or so of his competitors sell the goods which they make. Collectively the defendants owe no duty to any one of their competitors to regulate the price they fix for their goods so as not to interfere with the price he fixes for his own. And it is difficult to see how the public is injuriously affected by any such agreement between the combining manufacturers. If the price so fixed is the normal and usual one theretofore prevailing, certainly the public cannot complain; still less if the price be reduced. If a combination of the capital and business abilities and factory appliances of many different manufacturing establishments enables them to produce an equally good output at à reduced cost, so that they can sell such output cheaper than any single manufacturer could, surely the public does not suffer. If, on the contrary, the combining defendants fix the price too high, they restrain their own trade only; the public will buy the goods it wants, not from them, but from their competitors. There are no averments in the ˙complaint to show that the defendants are all, or even substantially all, of the manufacturers of watch cases in the United States, or even in any single one of the different states wherein their manufactories are located. For aught that appears, they represent but a small part of the watchcase industry, and there is nothing to prevent the number of their competitors from increasing to whatever extent the public demand· for such goods may require. This is no such case as that presented in Arnot v. Coal Co., 68 N. Y. 558, where, as was said, "the region of the production of [anthracite coal] is known to be limited." There is nothing in the complaint nor in common knowledge to show that the production of watch cases may not be practically unlimited. An agreement, therefore, between some of the makers of watch cases to sell their commodities at a uniform price, which they fix upon with regard only to their private emolu-

ment and profit, is not an agreement in general restraint of trade, or unreasonably injurious to the public welfare, within the authorities.

The other contract or combination which plaintiff contends to be unlawful is the agreement of defendants not to sell goods of their manufacture to any one who thereafter should buy or sell goods manufactured by the plaintiff.   To the extent that such refusal to deal with those persons who dealt with plaintiff induced such persons to cease dealing with the plaintiff, and to buy watch cases from one or other of the defendants, the agreement did not operate in general restraint of trade, the total amount of purchases and sales remaining constant, so far as the complaint shows.   It did, no doubt, operate in partial restraint of trade, viz. to restrain some part of plaintiff's trade in the watch cases it manufactured.   But it does not follow that such restraint was unreasonable, nor heavier than the interest of the favored party required.   An individual manufacturer or trader may surely buy from or sell to whom he pleases, and may equally refuse to buy from or to sell to any one with whom he thinks it will promote his business interests to refuse to trade.   That is entirely a matter of his private concern, with which governmental paternalism has not as yet sought to interfere, except when the property he owns is "devoted to a use in which the public has an interest"; and such public interest in the use has as yet been found to exist only in staple commodities of prime necessity.   Munn v. Illinois, 94 U. S. 113; Budd v. New York, 143 U. S. 517, 12 Sup. Ct. 468.   It is a business device, probably as old as business itself, to seek to increase the number of one's customers, and the extent of their purchases, by treating more favorably those who become exclusive customers.   Certainly there is nothing unlawful or unfair in the statement to the trade by the maker of any kind of merchandise, "My goods are for sale only to those who will buy from me exclusively, not to others."   And the case is in no way different if a half a dozen individuals combine into a partnership, or an hundred individuals combine into a corporation, and adopt the same method to enlarge their business.   If this be so,— and no authority to which we are referred holds to the contrary,— it is difficult to see in what respect it is unlawful for a score of different manufacturers to enter into a like arrangement to push the sales of their own goods, or to secure some business benefit to themselves by increasing the number of their exclusive customers, when there is nothing to show that the parties so combining constitute substantially all, or even a majority, of the manufacturers of such goods, even in the half dozen states where their factories are located, and when the field for manufacture is open to all.   It is not an unlawful business enterprise for sellers to seek to secure the entire trade of individual buyers, and an agreement between sellers, who wish to confine their dealings to such buyers only, not to sell to others, is not an unfair or unreasonable measure of protection for such trade.   Nor can it be claimed that such an agreement between sellers who represent but a part of the trade is injurious to the public, which has all the rest of the trade to deal

with. "Unless an agreement involves an absorption of the entire traffic, * * * it is not objectionable to the statute [of 1890]. Competition is not stifled by such an agreement, and other dealers would soon force the parties to the agreement to sell at the market price, or a reasonable price, at least." U. S. v. Nelson, 52 Fed. 646. It is difficult to see wherein the agreement complained of is injurious to the public. Certainly it is not one in general restraint of trade. It seems to be a reasonable business device to increase the trade of one set of competitors at the expense, no doubt, of their business rivals, who are equally free to avail of similar devices to secure their own trade. As such it is not obnoxious to the statute. The agreements or contracts complained of being not unlawful, the giving notice to the world of their existence is no offense. The judgment sustaining the demurrer should be affirmed.

SHIPMAN, Circuit Judge (concurring). I concur with Judge LACOMBE in the conclusion that the circuit court properly sustained the demurrer of the E. Howard Watch & Clock Company in the above-entitled cause. I am not now prepared to adopt, as a reason for that conclusion, what I understand to be Judge LACOMBE'S opinion, that the agreement and conduct of the combined defendants, which are set forth in the complaint, do not constitute a violation of the first or second sections of the act of July 2, 1890. My reason for regarding the complaint as demurrable is the more technical one that the allegations in regard to the acts which the defendants committed, or in regard to the facts which are charged to have existed, do not show that the defendants restrained any interstate commerce, or monopolized any part of such trade or commerce. What the statute struck at was "combinations, contracts, and conspiracies to monopolize trade and commerce among the several states or with foreign nations" (U. S. v. E. C. Knight Co. [Jan. 21, 1895] 15 Sup. Ct. 249), but it will not be contended that section 7 of the statute gives a cause of action to any person against another person who had merely planned to commit or unsuccessfully attempted to commit the prohibited acts. The illegal contract or attempted monopoly must have resulted in an injury of some sort to the plaintiff's interstate business. It should therefore appear directly, and not by way of inference, that the acts of the defendants, or their attempts to monopolize interstate commerce, resulted in its restraint or monopoly, to the plaintiff's injury. Hutchins v. Hutchins, 7 Hill, 104. "An action will not lie for the greatest conspiracy imaginable if nothing be put in execution, but, if the party be damaged, the action will lie. From whence it follows that the damage is the ground of the action." Savile v. Roberts, 1 Ld. Raym. 378. The important allegations in regard to the conduct of the combined defendants and the results of the acts are that the complainant owned an extensive watch-case manufactory in Kentucky, and subsequently in Ohio, and had the capacity to manufacture and offer for sale 25,000 watch cases per month, and that before November 16, 1887, it sold all of said

goods to a great number of dealers throughout the United States and Canada. It may be admitted that this substantially alleges that the complainant engaged in interstate commerce. It is also alleged that the defendants agreed, on or about said day, that they would not thereafter sell any goods manufactured by them to any person who should buy or sell any goods manufactured by the complainant, and that the many dealers in watch cases throughout the United States and Canada, and that many of the complainant's existing and previous customers, were notified of this agreement; that upon receipt of such notice a large number of the then and theretofore purchasers of the plaintiff's watch cases withdrew their patronage, and ceased thereupon entirely to purchase or deal in any wise in plaintiff's goods; that all the acts of the defendants were done and performed for the purpose of establishing a monopoly in the supply of watches to the public, contrary to the policy of the law, and in violation of the statutes of the state of New York and of the United States. But the residence of no withdrawing customer is alleged. No interference with interstate commerce is shown, except by inferring that some of the withdrawing customers lived in another state than Ohio; and, if they had bought the complainant's goods, interstate transportation would have taken place. The general allegation that the acts done in pursuance of the compact of November 16, 1887, and before the passage of the act of 1890, were done for the purpose of establishing a monopoly in the supply of watches, in violation of the statutes of New York and of the United States, is not an allegation that the acts restrained, or that the attempt actually monopolized, interstate trade or commerce.

It is next alleged that after the passage of the act of July 2, 1890, "all the former purchasers and dealers in said plaintiff's watch cases and other dealers in watch cases were, as plaintiff is informed and verily believes, ready and willing to buy large quantities of said plaintiff's goods, and this plaintiff would have at once regained all the business and the profits whereof it had been deprived by the acts aforesaid of the defendants, but that said defendants, after the pasage of the said act of congress, ratified, confirmed, renewed, and continued the contracts, agreements, and combinations hereinbefore alleged, and in like manner, and with the same intention as hereinbefore alleged, served notices of their said ratification, confirmation, renewal, and continuance of the said agreements and combinations upon all said dealers in plaintiff's watch cases, whereby said dealers have continued to this day, forced by said renewal threats of defendants, and compelled thereby, and not otherwise, to refuse to purchase plaintiff's watch cases, or to deal in any wise therein." The allegation is that the former purchasers and dealers, who were intimidated by the previous notices, and who had stopped purchasing, continued, in consequence of the new notice, to be intimidated, and were forced by the renewed threats to refuse to purchase the plaintiff's watch cases. The names of the states in which these intimidated persons resided are not given. No new diversion of trade and no

new interference with interstate commerce are alleged. Admitting that the complaint sufficiently avers renewed acts of the defendants, there is the same absence of allegation that any customer, old or new, outside of the state of Ohio, refused to purchase, or that interstate commerce was interfered with. The complaint was, of course, not based upon the theory in the pleader's mind that the statute prohibited an attempted monopoly and a consequent injury, whether the trade or commerce monopolized was domestic or interstate, but he seems to have been cautious in regard to averring that the attempted monopoly had affected interstate commerce. Where a plaintiff declares upon a statute, especially upon one penal in its character, imposing, as this one does, three times all actual damages as a punishment for offenses against its provisions, his complaint should contain explicit averments, which would, if not controverted, bring his cause of action within the provisions of the statute. The pleader in this case has failed to thus aver that trade between the states or with foreign countries has been restrained by action of the defendants, and the judgment of the circuit court sustaining the demurrer should, in my opinion, be affirmed.

WALLACE, Circuit Judge. I agree with the majority of the court that this action must be deemed to be founded upon the act of congress of July 2, 1890, and that the demurrer to the complaint was well taken unless the complaint sets forth a cause of action given by that statute. I dissent, however, from the conclusion that the complaint does not set forth such a cause of action. Briefly stated, the averments of the complaint are that prior to the time of the enactment of the statute the plaintiff was engaged in manufacturing and selling watches in the states of Ohio and Kentucky, having a market therefor throughout the United States, and selling its goods to a great number of dealers in other states; that the defendants, also manufacturers of watches, had agreed among themselves to maintain an arbitrary fixed price for all their goods; that thereafter, in order to compel plaintiff to join them in that compact, and prevent it from selling its goods unless it did so, the defendants combined in an agreement not to sell any watches made by any of them to any dealers who should thereafter buy of the plaintiff, and notified the dealers in watches throughout the United States of the agreement; that thereafter the defendants did refuse to sell such dealers as had bought of plaintiff, and thereby they prevented a great number of dealers from buying of plaintiff, and effected a complete boycott of its trade; and that, after the statute was passed, the same combinations and acts were renewed and continued by the defendants, with the malicious purpose, and with the result, of suppressing plaintiff's trade. The complaint does not explicitly allege that this combination was entered into or these acts were done by the defendants for the purpose of preventing the plaintiff from selling to customers in other states; but from the facts alleged the conclusion is irresistible that this purpose was comprehended in the

conspiracy of the defendants, and the law presumes that they contemplated the ordinary and natural consequences of their acts. The statute declares various acts affecting trade or commerce among the several states or with foreign nations criminal, some of them being acts which are not criminal at common law. It also gives a civil remedy, cognizable by the federal courts, to any person or corporation injured by reason of such acts. The statute can have no application to acts affecting purely infra-state trade,— the commerce only between citizens of the same state,—not only because its language does not permit it, but because the power of commercial regulation given to congress by the constitution is restricted to interstate commerce, foreign commerce, and commerce with the Indian tribes. By one section it declares it to be a misdemeanor to monopolize, or attempt to monopolize, or combine or conspire to monopolize, any part of the trade or commerce among the several states or with foreign nations; by another it declares illegal every contract, combination in the form of trust or otherwise, or conspiracy in restraint of such trade or commerce. The same punishment is affixed to each of the different offenses. The questions in the case are whether such a combination or conspiracy as is set forth in the complaint operates upon interstate trade or commerce, and whether it is in restraint of trade, within the meaning of that term as used by congress in the statute. I cannot doubt that a combination intended and adapted to strangle the trade between the dealer who sells his goods in one state and his customers in other states of the Union who buy them,—a trade which necessarily involves the transportation of the goods from one state to another,—is intended and adapted to affect interstate commerce, and is, therefore, within the scope of the prohibition of the statute. The power of regulation is not confined to commerce which begins with the transit of goods, but operates upon all commerce of which the transit is an ordinary incident. This is illustrated by the legislation of congress in regard to trade-marks. The original trade-mark statute was held to be void because it was intended to embrace trade-marks used in infra-state commerce as well as in interstate commerce. Trade-Mark Cases, 100 U. S. 22. Thereupon congress passed another statute protecting trade-marks used in commerce with foreign nations or with the Indian tribes. In conferring jurisdiction of suits to protect such trade-marks upon the federal courts congress declared that such courts should not take cognizance unless the trade-mark in controversy "is used on goods intended to be transported to a foreign country," thus plainly indicating an intention to give a remedy although the trade-mark has not been used upon goods actually transported or in course of transportation. See Ryder v. Holt, 128 U. S. 525, 9 Sup. Ct. 145. It has been repeatedly said in the opinions of the supreme court that commerce among the states, as that term is used in the constitutional provision which vests in congress the power of regulation, includes the buying and selling of commodities, and the transportation incidental thereto. County of Mobile v. Kimball, 102 U. S.

691–702; Gloucester Ferry Co. v. State of Pennsylvania, 114 U. S. 196–203, 5 Sup. Ct. 826; Kidd v. Pearson, 128 U. S. 1–20, 9 Sup. Ct. 6. The Knight Case does not disaffirm the proposition, but reiterates it. What the Knight Case decides is that a combination to control the manufacture of a product within a single state is not in restraint of interstate commerce, notwithstanding the fact that such commerce may be indirectly affected by it. The court say that the fact that an article is manufactured for export to another state does not of itself make it an article of interstate commerce, and the intent of the manufacturer does not determine the time when the article or product passes from the control of the state and belongs to commerce. But the court also used this language: "Contracts to buy, sell, or exchange goods to be transported among the several states, the transportation and instrumentalities, and articles bought, sold, or exchanged, for purposes of such transit among the states, or put in the way of transit, may be regulated; but this is because they form part of interstate trade •or commerce." The acts charged against the defendants are intended and adapted to impinge upon the "contracts to buy, sell, or exchange goods to be transported among the several states," made and to be negotiated by the complainant with its customers in other states; and it cannot matter whether those contracts are negotiated in the state where the goods were produced or in the state where the customers of complainant reside.

Are the acts charged in restraint of trade? The primary purpose of the conspiracy set forth was doubtless to compel the plaintiff to join in a compact with the other defendants to maintain an arbitrary price or scale of prices for their goods, or otherwise to drive the corporation out of business; but its legitimate and necessary result was to likewise deprive dealers in watches generally, carrying on their business in many states, of the untrammeled exercise of their right to buy from the plaintiff. The books are full of cases in which a covenant not to carry on a business or vocation has been declared to be in restraint of trade, although the contract was only to restrict the covenantor. As is said in Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. St. 173: "The illegality of contracts affecting public trade appears in the books under many forms. The most frequent is that of contracts between individuals to restrain one of them from performing a business or employment." So conspiracies aimed at the trade or occupation of a single person have not only been declared civilly actionable, but criminal, because affecting the public as well as the immediate individual. In the early case of Rex v. Eccles, 3 Doug. 337, the indictment alleged that the defendants had conspired to "deprive and hinder" one "from following and exercising" his trade as a hatter; and Lord Ellenborough alluded to it as one for conspiracy "in restraint of trade, and so far a conspiracy to do an unlawful act affecting the public." Rex v. Turner, 13 East, 228, 231. Doubtless, in prohibiting contracts or combinations in restraint of trade it was the intention of congress to prohibit only those which were previously recognized at common law as belonging to that category, and not to prohibit

any which only effect a reasonable restraint. Such contracts or combinations as operate only in partial restraint of trade, are made for a just and honest purpose, and are for the protection of the legitimate interests of the parties, are consistent with the public convenience and the general welfare. And it is undoubtedly true that the tendency of modern judicial opinion is to regard with more liberality than formerly prevailed all contracts or combinations which are designed to protect parties from unnecessarily injurious competition, even though their indirect results may be to subject the public to a monopoly. I do not think the combination set forth in the complaint can be approved upon any such considerations. No body of manufacturers is justified in combining to coerce a competing manufacturer to join them and sell his goods at a price to be fixed by them, and to destroy his business in the event of his refusal to do so; and it matters not that they propose to destroy his business by peaceful methods of influencing his customers not to deal with him. "Men can often do by the combination of many what severally no one could accomplish, and even what, when done by one, would be innocent." Morris Run Coal Co. v. Barclay Coal Co., supra. "Any one man, or any one of the several men, acting independently, is powerless; but when several combine and direct their united energies to the accomplishment of a bad purpose, the combination is formidable. Its power for evil increases as its numbers increase." State v. Glidden, 55 Conn. 46, 8 Atl. 890. "Every man has the right to employ his talents, industry, and capital as he pleases, free from the dictation of others; and if two or more persons combine to coerce his choice in this behalf, it is a criminal conspiracy, whether the means employed are actual violence or a species of intimidation that works upon the mind." State v. Stewart, 59 Vt. 273, 9 Atl. 559. The weight of authority supports the proposition that a combination is not only actionable, but is a criminal conspiracy, whenever the act to be done has the necessary tendency to prejudice the public, or to oppress individuals by unjustly subjecting them to the power of confederates, and giving effect to their purposes, whether of extortion or of mischief. The doctrine of some of the adjudications that a conspiracy is not criminal unless its object is to compass some criminal purpose, or some purpose not criminal by criminal means, is not the prevailing opinion. It suffices to quote the language of Chief Justice Shaw in Com. v. Hunt, 4 Metc. (Mass.) 111, 123, as follows:

"Without attempting to review and reconcile all the cases, we are of opinion that, as a general description, though perhaps not a precise and accurate definition, a conspiracy must be a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means. We use the terms 'criminal or unlawful' because it is manifest that many acts are unlawful which are not punishable by indictment or other public prosecution; and yet there is no doubt, we think, that a combination by numbers to do them would be an unlawful conspiracy and punishable by indictment."

The statute upon which this action is founded discriminates between combination and conspiracy, and it not only makes both

criminal, but it makes contracts in which there is no element of a conspiracy or combination also criminal if in restraint of trade. It is therefore quite immaterial whether the acts charged in the complaint are sufficient to constitute a criminal conspiracy at common law. It suffices if the combination set forth is oppressive in its nature, and mischievous in its effects. I do not question the right of the defendants to combine for their own protection against unfair competition, and in that behalf, their commodity not being one of prime necessity, to agree not to sell to those who do not buy exclusively of them, or who buy of the complainant or some other obnoxious competitor; but I repudiate the doctrine that they can combine to induce the customers of a rival manufacturer not to deal with him unless he will join their combination. Upon the averments in this complaint, which are of course to be taken as true for the purposes of the demurrer, this case is one in which the defendants are acting not from motives of self-protection, but oppressively, and are actively concerting to destroy the business of a rival by inducing other dealers not to trade with him because he will not sell his goods at their prices. In People v. Fisher, 14 Wend. 1, the defendants were indicted under a statute making it criminal for two or more persons to conspire to commit any act "injurious to trade or commerce." They were journeymen shoemakers, and had concerted together to fix the price of making coarse boots, agreeing that if a joruneyman shoemaker should make any such boots at a compensation below the rate established he should pay a penalty, and, if any master shoemaker should employ a journeyman who had violated their rules, that they would refuse to work for him, and would quit his employment. In sustaining the indictment, and declaring such acts criminal, the court used this language:

"The man who owns an article of trade or commerce is not obliged to sell it for any particular price, nor is the mechanic obliged by law to labor for any particular price. He may say that he will not make coarse boots for less than one dollar per pair, but he has no right to say that another mechanic shall not make them for less. The cloth merchant may say that he will not sell his goods for less than so much per yard, but has no right to say that another merchant shall not sell for a less price. If one individual does not possess such a right over the conduct of another, no number of individuals can possess such a right. All combinations, therefore, to effect such an object are injurious not only to the individual particularly oppressed, but to the public at large. * * * The interference of the defendants was unlawful. Its tendency is not only to individual oppression, but to public inconvenience and embarrassment."

This language exactly fits the present case. For these reasons I think the complaint states a good cause of action, and the judgment sustaining the demurrer should be reversed.