## RAYMOND BROS.-CLARK CO. v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Eighth Circuit.   May 8, 1922.)

No. 216.

Trade-marks and trade-names and unfair competition ⬳68—Ceasing to purchase from manufacturer, unless sales to competitor cease, is not unfair competition.

A wholesaler has a right to purchase merchandise or refuse to purchase it from any person he chooses, and for any reason, or no reason at all, and to refuse to make further purchases from a manufacturer, unless that manufacturer agrees to cease selling to another wholesaler, who was also engaged in the retail business, without being guilty of unfair methods of competition, contrary to the Federal Trade Commission Act (Comp. St. §§ 8836a-8836k).

Petition to Review Order of the Federal Trade Commission.

Petition by the Raymond Bros.-Clark Company to review an order of the Federal Trade Commission.   Petition granted, and order vacated.

Emmett Tinley, of Council Bluffs, Iowa (W. E. Mitchell and Tinley Mitchell, Pryor, Ross & Mitchell, all of Council Bluffs, Iowa, on the brief), for petitioner.

Adrien F. Busick, of Washington, D. C. (W. H. Fuller, of Washington, D. C., on the brief), for respondent.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge.   This is an original proceeding by petitioner to obtain a review of an order of the Commission whereby petitioner, its officers and agents, were ordered to forever cease and desist from directly or indirectly—

"(1) Hindering or preventing any person, firm, or corporation in or from the purchase of groceries, provisions, or the like commodities direct fom the manufacturers or producers thereof, in interstate commerce, or attempting so to do.

"(2) Hindering or preventing any manufacturer, producer, or dealer in groceries, provisions, and the like commodities in or from the selection of customers in interstate commerce, or attempting so to do.

"(3) Influencing or attempting to influence any manufacturer, producer, or dealer in groceries, provisions, and the like commodities, not to accept as a customer any firm or corporation with which the manufacturer, producer, or dealer, in the exercise of a free judgment, has or may desire to have such relationship."

This order was made in a proceeding commenced by the Commission against petitioner for the alleged violation of the provisions of section 5 of an Act to Create a Federal Trade Commission, approved September 26, 1914 (38 Stat. 717 [Comp. St. § 8836e]), in using an unfair method of competition against the Basket Stores Company, a corporation organized under the laws of Nebraska.   Although the charge made against petitioner was with reference to said Basket Stores Company, the order above set forth is as broad as the business world, and in any event would have to be modified, if it were to be sustained in

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

any particular. The order, however, was made pursuant to findings of fact, made by the Commission, which are as follows:

"(1) Respondent is a corporation organized under and existing by virtue of the laws of the state of Nebraska. Its principal place of business is at Lincoln, Neb. Respondent's business is that of a wholesale grocer, buying groceries, provisions, and the like commodities in wholesale quantities from the manufacturers thereof throughout the United States, which commodities are transported from points outside the state of Nebraska to the warehouse of the respondent at Lincoln, Neb., and are resold and transported to customers in and beyond the state of Nebraska. The business operations of the respondent include sales and deliveries in Nebraska, Colorado, Kansas, Wyoming, South Dakota, and Montana, and its annual volume of business is approximately $2,500,000. In the conduct of its business the respondent is in competition, among others, with the Basket Stores Company.

"(2) The Basket Stores Company is a corporation organized under and existing by virtue of the laws of the state of Nebraska. Its principal place of business is at Omaha, Neb. The Basket Stores Company conducts two lines of business—one, that of a wholesale grocer; and that of retail selling through a chain or organization of retail stores. As a wholesale grocer, the Basket Stores Company maintains a warehouse at Omaha, and a branch warehouse at Lincoln, Neb. It buys groceries, provisions, and the like commodities in wholesale quantities from the manufacturers thereof throughout the United States, which commodities are transported from points outside the state of Nebraska to the warehouses of the Basket Stores Company at Omaha and Lincoln, Neb., and are resold in part and transported to customers within and outside the state of Nebraska. This part of the Basket Stores Company's business is about 10 per cent. of the total. The Basket Stores Company was licensed as a wholesale grocery house by the United States Food Administration. which fact was known to the respondent. The Basket Stores Company also operates a series or chain of retail stores, 72 in number, 4 of which are in Iowa; the remainder being located in Nebraska. There are, at this time, 18 stores operated by the Basket Stores Company in Lincoln. The groceries, provisions, and like commodities distributed through these stores were supplied from the Basket Stores Company's warehouses. About 90 per cent. of the company's business was done through these retail stores. The total annual volume of the Basket Stores Company's business is approximately $2,500,000.

"(3) In the month of September, 1918, a representative of F. A. Snider Preserve Company solicited from the Basket Stores Company's officials, at its head office at Omaha, and obtained an order for commodities produced by the Snider Company, to be shipped to the warehouse of the Basket Stores Company at Lincoln. The Snider Company also secured orders from the respondent and other customers in neighboring communities. The commodities sold in and around Lincoln were placed by the Snider Company in one car, consigned to respondent at Lincoln, making up what is known as a "pool" car, to get the benefit of the freight rate on a car lot shipment. The Snider Company sent to respondent a statement of the car contents, showing the various business houses for which certain specified goods were intended, the Basket Stores Company and its purchase from Snider Company being shown on this statement.

"(4) This pool car, consigned to respondent, reached Lincoln, Neb., on October 10, 1918, and was promptly unloaded, and the contents distributed by respondents. Its own commodities were placed in its warehouse, the commodities belonging to business houses outside of Lincoln were reconsigned to them by local freight, and the other purchasers in Lincoln were notified of the arrival of their goods and promptly obtained the same, except the Basket Stores Company. The commodities belonging to this company were stored in respondent's warehouse. The Basket Stores Company was not notified of the arrival of these goods in Lincoln, or of their presence in respondent's warehouse, and no opportunity to obtain its goods was afforded the Basket Stores Company until November 15, 1918, when respondent notified the Basket Stores Company of the presence of its property.

"(5) The Basket Stores Company was in need of these commodities for its trade, its stock of these goods was low, and the delay in receipt due to the actions and failure of the respondent to extend to the Basket Stores Company the same course of dealing that it used with all the other owners of commodities contained in the pool car was a hindrance and an obstruction to the Basket Stores Company in the conduct of its business, in competition with the respondent and others in the wholesale trade and with its competitors in the retail trade.

"(6) On October 8, 1918, prior to the arrival of the pool car at Lincoln, the respondent having received the statement from F. A. Snider Preserve Company regarding the contents of the car and the distribution to be made thereof, in writing protested to the Snider Company against the sale direct to the Basket Stores Company, and asked for the allowance of the regular jobbers' profit on the sale, as though made through respondent. The Snider Company did not reply to this letter. Subsequent to the arrival of the car at Lincoln, the distribution of its contents to the owners thereof, except as to the Basket Stores Company, and while the goods purchased by that company were in respondent's custody, respondent wrote the Snider Company on October 22, 1918, referring to the unanswered letter, and asking what it was to charge the Snider Company for checking out, unloading, and reshipping the other jobbers' goods. It likewise wrote the Snider Company on the same day with reference to damage to goods in transit. In response to a request from the Snider Company for payment, respondent wrote, on November 16, declining to make payment to the Snider Company for goods purchased from it by the respondent until reply was made by the Snider Company to respondent's letters (of October 8 and 22), and until allowance was made respondent for the jobbers' commission on the sale to the Basket Stores Company. The Snider Company suggested that respondent remit, taking credit for amounts claimed, and explaining fully the reasons therefor. The respondent complied, deducting, among other amounts, the sum of $100 as commission on the sale to the Basket Stores Company. This deduction, among others, the Snider Company refused to allow, and returned the remittance. Whereupon on December 16, respondent wrote the Snider Company, insisting upon the allowance of this commission, protesting against the action of the Snider Company in selling direct to the Basket Stores Company, and threatening the Snider Company with the cessation of respondent's business and return of all the goods produced by the Snider Company then in respondent's stock, if this commission were not allowed, and the Snider Company continued direct sales to the Basket Stores Company.

"(7) Early in January following, the Snider Company sent a representative to Lincoln, who interviewed the president of the respondent in an attempt to obtain a settlement of the controversy, which was not successful. The respondent, in accordance with the statements in its letter of December 16, ceased to purchase from the Snider Company."

The Commission concluded from the above findings of fact that the conduct of petitioner unduly hindered competition between the Basket Stores Company and others similarly engaged in business, and that the intent and purpose of the petitioner was to press the F. A. Snider Company to a selection of customers in restraint of its trade, and to restrict the Basket Stores Company in the purchase of commodities in competition with other buyers. We are of the opinion that the findings of the Commission do not show petitioner to have been guilty of an unfair method of competition, so far as the Basket Stores Company is concerned, or others similarly engaged in business. There is no finding that petitioner combined with any other person or corporation for the purpose of affecting the trade of the Basket Stores Company, or others similarly engaged in business. So far as petitioner itself is concerned, it had the positive and lawful right to select any particular merchan-

dise which it wished to purchase, and to select any person or corporation from whom it might wish to make its purchase. The petitioner had the right to do this for any reason satisfactory to it, or for no reason at all. It had a right to announce its reason without fear of subjecting itself to liability of any kind. It also had the unquestioned right to discontinue dealing with any manufacturer, or in this particular instance with the F. A. Snider Preserve Company, for any reason satisfactory to itself or for no reason at all. Any incidental result which might occur by reason of petitioner exercising a lawful right cannot be charged against petitioner as an unfair method of competition. U. S. v. Trans-Missouri Freight Association, 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007; U. S. v. Colgate & Co., 250 U. S. 300, 39 Sup. Ct. 465, 63 L. Ed. 992, 7 A. L. R. 443; Victor Talking Machine Co. v. Kemeny (C. C. A.) 271 Fed. 810; Federal Trade Commission v. Gratz, 253 U. S. 421, 40 Sup. Ct. 572, 64 L. Ed. 993; Jergens v. Woodbury (D. C.) 271 Fed. 43, 44; Cudahy Co. v. Frey & Sons, 261 Fed. 65, 67, 171 C. C. A. 661; Union Pacific Coal Co. v. U. S., 173 Fed. 737, 97 C. C. A. 578; Dueber Watch-Case Co. v. Howard Watch & Clock Co., 66 Fed. 637, 644, 645, 14 C. C. A. 14; Western Sugar Refinery Co. et al. v. Federal Trade Commission (C. C. A. Ninth Cir., Oct. 10, 1921) 275 Fed. 725; Kinney-Rome Co. v. Federal Trade Commission (C. C. A. Seventh Cir., Sept. 8, 1921) 275 Fed. 665; Standard Oil Co. v. Federal Trade Commission (C. C. A.) 273 Fed. 478, 17 A. L. R. 389; Eastern States Retail Lumber Dealers' Association v. U. S., 234 U. S. 600, 34 Sup. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788; U. S. v. American Tobacco Co., 221 U. S. 106, 31 Sup. Ct. 632, 55 L. Ed. 663; Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 227 Fed. 46, 48, 141 C. C. A. 594.

Being of the opinion that the facts found by the Commission do not show an unfair method of competition by petitioner, its petition to revise is granted, and the order of the Commission is vacated and set aside.