MOTLEY, GREEN & CO. v. DETROIT STEEL & SPRING CO. et al.

(Circuit Court, S. D. New York.　May 9, 1908.)

1. ACTION—NATURE—HOW DETERMINED.
The complaint in an action determines whether the action is at law or in equity; it being immaterial whether the complaining party is described as plaintiff or as complainant.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, § 143.]

2. SAME.
An action, wherein complainant alleges the execution of a conspiracy to break a contract made with him by one of the defendants, and claims money damages only, is an action at law, and not a suit in equity.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, §§ 124–143.]

3. CONSPIRACY—INJURY TO PROPERTY RIGHTS—CIVIL LIABILITY.
Though individuals or corporations may conspire with impunity if they do nothing to execute the conspiracy, if they conspire to do a wrong to the person or property or property rights of a third person, and execute the conspiracy to such person's injury, they are liable jointly or severally.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, §§ 4, 14.]

4. SAME—SOLVENCY OF DEFENDANTS—MATERIALITY.
It is immaterial to one's right to recover, in one action, damages for the execution of a conspiracy to break a contract made by one of the defendants, whether defendants are solvent.

5. SAME—MALICE.
The existence of malice on defendants' part is not essential to their liability to complainant for executing a conspiracy to break a contract, made with complainant by one of the defendants.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, § 3.]

6. SAME.
That complainant in good faith entered upon performance of a contract with defendant company, expending large sums of money legitimately in obtaining customers for defendant's product, it being agreed complainant should receive large commissions; that defendant organized codefendant company, the officers of the two being in the main identical; that both companies well knew of the contract; that the companies conspired to injure complainant and deprive it of the benefits of the contract and to prevent performance thereof by making a pretended sale of defendant's properties and business to codefendant; that they conspired that codefendant should pretend to run the business, refusing to recognize complainant's rights; that they further conspired to make codefendant a mere sales agent for defendant, giving to it the rights, etc., previously enjoyed by complainant; that the companies conspired to break complainant's contract; that the conspiracy was executed; and that complainant was thereby damaged by the loss of commissions, money expended in advertising, etc.—shows complainant's right to recover against the companies.

On Demurrers to Complaint.

Luce & Davis (Robert L. Luce, of counsel), for complainant.

Joline, Larkin & Rathbone (Arthur H. Van-Brunt and Henry V. Poor, of counsel), for defendant Detroit Steel & Spring Company.

Simpson, Thacher & Bartlett, for defendant Railway Steel Spring Company.

RAY, District Judge.   The name of the complainant company was originally Thornton N. Motley Company, and was duly changed to Motley, Green & Co.   It is a resident, citizen, and inhabitant of the southern district of the state of New York.   The defendant the Detroit Steel & Spring Company is a foreign corporation, organized and existing under the laws of the state of Michigan.   The defendant Railway Steel Spring Company is a foreign corporation, organized and existing under the laws of the state of New Jersey.   The complaint then charges that on or about November 18, 1901, the complainant and defendant the Detroit Steel & Spring Company duly made and entered into a written contract, which is attached to the complaint and made a part thereof, whereby the Detroit Company constituted the complainant its sole sales agent for the sale of engine and car springs to steam and street railways whose purchasing departments are located in certain specified territory.   The complaint gives the commissions which complainant was to receive upon net sales made by it as such agent, and stated that such commissions were to be paid when settlement of invoice was made by the buyer.   The complainant agreed to act as such sales agent within such territory, and look after the sale of such property with due care and energy and for the best interests of the Detroit Company.   The commissions were to be in lieu of all other compensation, and included expenses incurred by the complainant.   The agreement was to be in force from November 18, 1901, to November 18, 1902, subject to a provision reading as follows:

"To cancellation upon sixty days' notice in writing by either party at their option for such cause as would amount to a breach of contract upon the part of the party to whom such notice is given."

The complainant began to act as such sales agent immediately, and faithfully kept and performed all of its covenants and agreements, and expended over $2,500 in advertising, etc.   January 4, 1902, the agreement was changed by the addition of the following, as stated in the complaint:

"It is to be understood that Motley & Company (meaning this complainant) are to use their best endeavors to promote the welfare of the D. S. & S. Co. (meaning the said defendant the Detroit Company) without regard to the question of commissions.   On our part (meaning the said defendant the Detroit Company) and as an offset to the work which you (meaning this complainant) do for us (meaning the said defendant the Detroit Company) without remuneration we (meaning the said defendant the Detroit Company) give you (meaning this complainant) the benefit of all sales made by our (meaning the said defendant the Detroit Company) company to the trade in your province (meaning the territory referred to in said agreement of November 18, 1901) whether the orders come direct or through your (meaning this complainant's) office."

Thereafter the complainant continued to act as such sales agent to the satisfaction of the Detroit Company, and secured many large and valuable orders for goods made by the Detroit Company, and referred to in the agreement. The complaint then charges that the Detroit Company had a large and complete plant, and was able to manufacture its goods and products so as to sell same at a price less than its competitors for similar goods, and that such fact was well known throughout the United States. The complaint then alleges that thereafter, and on or about the 27th day of February, 1902, the defendant Railway Steel Spring Company was organized, with a capital of $20,000,000, and that immediately upon its organization it proceeded to take over "under the terms of a pretended purchase" the property, plant, and business of the Detroit Company and the property, plants, and business of several other corporations, firms and individuals named, and that the most skillful and experienced officers of the Detroit Company were made officers of the Railway Company. The complaint then charges, in substance, that the Railway Company took over under said purchase, all the lands, personal property, good will, etc., of the Detroit Company, and occupied it and proceeded to carry on the business and to manufacture the same class of goods, and that the Detroit Company thereafter refused to quote prices to the complainant, or to fill orders for goods obtained by the complainant under the said contract and agreement making complainant its sole sales agent for such territory.

The complaint then charges that such pretended sale and transfer by the Detroit Company to the Railway Company was made for the express purpose of injuring the complainant, and that it did injure complainant, and rendered fruitless all the labors and efforts theretofore made by the complainant in the execution of the said contract, and caused to the complainant a total loss of all the money it had expended in the execution of said contracts and agreements. The complaint then charges that such transfer from the Detroit Company to the Railway Company was a part and the result of a conspiracy, entered into by and between the said defendants for the purpose of injuring and damaging the complainant, and with the design, purpose, and effect of preventing the complainant from performing its said contract with the Detroit Company, and rendering performance impossible, and that, by reason of such conspiracy and the transfer to the Railway Company pursuant thereto, the complainant suffered the loss of commissions upon the goods which it had sold, or might have sold, within the territory mentioned. The complaint also charges that the purpose and result of the conspiracy was that the defendant the Detroit Company failed to keep and perform the said agreement on its part, and failed and refused to comply with the provisions thereof. The complaint also charges that, as a result and part of the conspiracy and of the pretended sale, an arbitrary and uniform price for engine and car steel springs was fixed, whereby the complainant in its competition with other corporations, firms, and individuals was deprived of the benefits and advant-

ages which it would have derived under its contract with the Detroit Company. The complaint further charges that thereupon the Detroit Company, arbitrarily and without just cause, compelled the complainant to withdraw all the quotations and prices which it had previously authorized the complainant to submit to its customers, and which it had submitted as a basis for sales, and that complainant was thus deprived of its commissions, which it would have fully earned but for the conspiracy and its consummation.

The complaint further charges that the Railway Company from and after February 27, 1902, quoted prices of goods made at the plant of the Detroit Company, and proceeded to sell such goods to the customers of the complainant, and that pursuant to the conspiracy the Railway Company refused to quote prices to the complainant, and refused to permit and prevented the Detroit Company from quoting prices or furnishing goods upon orders obtained from complainant company. The complaint then charges that, when the two defendant companies entered into such conspiracy, they and their respective officers, agents, and employés knew of the said contracts and agreements existing between the Detroit Company and the complainant, and—

"that the object and result of the said conspiracy was to work a breach of the said contract by the said defendant the Detroit Company, and absolutely to prevent the performance of said several covenants and terms in said contracts to be performed, kept, executed, and operated by the said defendant the Detroit Company, and that the said pretended sale and transfer, by the said defendant the Detroit Company, of its lands, buildings, plants, fixtures, machinery, tools, patents, trade-marks, business and good will to and the said pretended purchase of the same by the said defendant Railway Steel Spring Company was to prevent this complainant from the performance and execution of and reaping and enjoying the benefits accruing to it by the terms of the said contracts and the substitution of the said defendant Railway Steel Spring Company as the sales agent within the said described territory of the said defendant the Detroit Company in the place and stead of this complainant."

The complaint then charges other acts done by the two companies pursuant to the said conspiracy, which it is alleged prevented complainant from performing the contract on its part, all to its great damage and loss. The complaint then charges as follows:

"Thirteenth. That, as the result and effect of said conspiracy, entered into by and between the said defendants as aforesaid, this complainant has suffered great and serious loss of commissions, earned by it pursuant to the terms of said contracts and agreements, and has suffered serious loss to its credit and standing in the business community, and with its customers, and has been discredited among its said customers within the territory mentioned and described in said contracts."

The complaint concludes by demanding judgment for the sum of $100,000.

It is unnecessary to recite the grounds of the demurrers. The demurrers treat this complaint as a bill in equity. It is nothing of the kind, and does not purport to be such. The action was brought in the Supreme Court of the state of New York, and removed thence to this court. It is evident that the amended complaint, which is the only one appearing in the record, was made and filed after such removal. It is true that in such complaint Motley, Green & Co. are spoken of

as "complainant," a term usually applied to describe the complaining party in an equity suit. In actions at law the complaining party is usually known as "plaintiff." I am of opinion that the complaint itself determines whether the action is at law or in equity. The complainant is certainly the plaintiff when he brings suit, and a plaintiff is always a complainant.

This complaint charges diversity of citizenship, shows on its face that more than $2,000 is involved, exclusive of interests and costs, sets out a valid and legal contract between complainant and the Detroit Company; that plaintiff entered on its performance in good faith, and did considerable business, and expended large sums of money legitimately in building up a business and obtaining customers for the goods of the Detroit Company, from which sales plaintiff was to receive large compensation by way of commissions. To show the value of this contract to complainant many allegations, to which I have referred, are inserted. The complaint then charges, in substance, that the Detroit Company took part in organizing the other company, known as the "Railway Steel Spring Company," the officers of the two being in the main identical, and that both companies well knew of the contract between the complainant company and the Detroit Company. That thereupon the two defendant companies, being in fact but one, operating together for a purpose, and that purpose being the injury of the complainant company, and to deprive it of the benefits of its said contract, and to prevent performance thereof, and to deprive it of commissions which it had partly earned, and had laid the foundation for earning, and which it would have earned but for their subsequent acts, entered into a conspiracy to make a pretended sale of the properties and business of the Detroit Company, including its franchise to the Railway Company, and that the Railway Company should thereupon pretend to take charge of and run the business, refusing to recognize the complainant or his rights, and refusing to quote prices or allow him to supply his customers, and to procure the Detroit Company to refuse to recognize complainant or its rights. The complaint charges that the conspiracy was, further, simply to make the Railway Company a mere sales agent for the Detroit Company, giving to it the rights and privileges and benefits previously conferred upon the complainant company, and that this was a device and conspiracy between the two companies to break the contract, and substitute the defendant Railway Steel Spring Company in place of the complainant company. The complaint alleges that this agreement and conspiracy was fully carried out and executed, the two companies uniting and acting for each other, and playing into each other's hands to break the contract and deprive plaintiff of his rights and earnings, actually and prospective; the two companies being run and managed by the same persons in point of fact. The complaint charges that these two wrongdoers, corporations run and managed by the same persons, to the same end, and for the same wrongful purpose, have mutually aided each other in violating this contract with complainant, and have mutually aided each other to make performance by complainant impossible, all to the great damage of complainant. One item of damage alleged is the loss of over $2,-

500 expended by complainant in advertising, etc., to build up the business and secure customers. Another item of damage is the loss of commissions, etc., some only partially earned, true, but which would have been fully earned but for the wrongful acts of the two companies working hand in hand, by mutual agreement, to prevent complainant from earning the commissions and profits; the Railway Steel Spring Company taking same for the benefit of both defendants.

If this complaint does not allege a cause of action against both these defendant companies, it seems to me impossible to frame a complaint against two corporations for a single wrongful act committed by both, the two acting in concert, knowingly and willfully, to perpetrate a wrong. It is quite true that individuals or corporations may conspire with impunity, provided they do nothing to carry their conspiracy into execution. If, however, they conspire to do a wrong or injury to the person or property or property rights of a third person, and execute the conspiracy through their authorized agents, and do damage to such third persons, they may be sued jointly or severally, and must answer for the consequences of the wrong.

This is an action at law. Money damages alone are sought and demanded. There is no prayer for equitable relief. It is entirely immaterial whether these defendants are solvent or insolvent. The complaint charges that they have united and acted together to perpetrate a wrong, viz., to enable the Detroit Company on its part to break and repudiate a valid contract; to pretend to be in a position where it could not perform; to pretend to have sold out its property and business, when in fact it had not; to enable the other party to act as sole sales agent for the sale of the goods under pretense simply of being the owner of the property and business, and of having charge of it and control of it when in fact it did not. The same men hold office in and manage the two companies. This complaint charges much more than a mere breach of contract by the Detroit Company. This is a single cause of action against both companies for a wrongful act which they conspired to perpetrate, and which the complaint alleges they did perpetrate, acting together to a common end; their joint acts resulting in damage to the complainant. If the defendants desire to know the particulars of the damages sustained by the plaintiff company, a bill of particulars, if ordered by the court, will give the necessary information.

The complaint is somewhat inartificially drawn. The terms and objects or purposes of the conspiracy, and the acts done in execution thereof, are not properly segregated. It is also true that the complaint does not state, in words, that the defendants "maliciously conspired," but still the facts stated show that, if the conspiracy was made as charged and carried out by the doing of the overt acts as charged, the conspiracy was in fact malicious. But I do not think actual malice was necessary. If the purpose of the conspiracy, confederating together, was to do the complainant company an actual injury by wrongfully and without justifiable cause depriving it of its employment, property, and property rights by deception, and wrongfully breaking a valid contract of employment for their own advantage and gain, and the purpose was accomplished, a cause of action is stated.

2 Cooley on Torts (3d Ed.) 592, 593, 594; 2 Addison on Torts, 739; Angle v. Chicago, St. Paul, etc., Railway, 151 U. S. 1, 10–15, 14 Sup. Ct. 240, 38 L. Ed. 55; Gregory v. Brunswick, 6 M. & G. 205; 1 Cooley on Torts, 209–212; Lumley v. Gye, 2 El. & Bl. 216.

Says Cooley (2 Cooley on Torts, 592–594 [3d Ed.]):

"Action for inducing breach of contract. One who maliciously or without justifiable cause induces a person to break his contract with another will be liable to the latter for the damages resulting from such breach. As to what will constitute justifiable cause cannot be satisfactorily defined, and must be left to the determination of the court in each case Some of the authorities hold that the action will not lie unless unlawful means are employed, such as fraud, deceit, or intimidation.

"Conspiracy to prevent employment. By conspiracy is here intended a combination of two or more persons to accomplish, by some concerted action, an unlawful end to the injury of another It was shown in a preceding chapter that the conspiracy was not in itself a legal wrong. It is a thing amiss, when it has an unlawful purpose in view, but it does not become a legal wrong until the unlawful purpose is accomplished, or until some act, distinctly illegal, is done towards its accomplishment. Nor is it perceived that the end itself can be unlawful if it can be accomplished by perfectly lawful means.

"There may be a difference in the law between breaking up a service, actually entered upon or contracted for, and inducing a person by any species of inducements, not unlawful in themselves, to refuse to contract for service. The latter may be wrong in morals, but not illegal; the former is an actionable wrong, standing upon exactly the same footing as the wrong by which the master loses his servant's assistance through his being wrongfully disabled. This general subject was recently so fully considered by the Court of Queen's Bench, in an action brought for maliciously procuring an actor to break his contract of service with the plaintiff, that a reference to the case, and to the authorities upon which it was decided, seems to be all that is important in this connection. It was held in that case by the majority of the court that the action will lie whether the service had actually been entered upon or not, provided a valid contract for it was in existence."

It is unnecessary to say that, if it is an actionable wrong for a third party to maliciously interfere in a contract between two parties and induce one of them to break that contract to the injury of the other, then it is an actionable wrong for a fourth party to conspire with and aid and assist such third party in perpetrating the wrong. In such case the conspiring parties would both be liable as joint wrongdoers. Now, if one of the contracting parties devises a scheme to avoid his contract and escape performance and, perhaps, liability, by combining and confederating with a third person to pretend to transfer to him his property and the business to which the contract relates, making known to such third person his contract obligations and his object and purpose, such third person to pretend to be the owner and to have the possession of and the management of the business and refuse to give employment or business to the other contracting party pursuant to the contract, and deprive him of gains, profits, and advantages already partially earned, and prevent his full performance so as to deprive him of what he is entitled to, and such third party enters into and becomes a party to the scheme, and for a consideration aids to carry it into full effect to the damage of the other party to the contract, can it be said that here is not a conspiracy to commit a wrong by deception and wrongful acts, and that it has

been consummated by the joint action of both parties? If so, and the third party is liable for the wrong, why are not both parties liable? Can the contracting party escape by saying:

"I have broken my contract, true, and your only remedy is an action for the breach of the contract"?

Can the third party escape by saying:

"All I have done is to aid one of the parties in·violating his contract—a thing he might have done in any event—and the sole remedy of the injured party is an action in damages for a breach of the contract against the party violating same"?

This sophistry in this class of cases has been repudiated by the Supreme Court of the United States and by the courts of many of the states and by those of England.

In Angle v. Chicago, etc., Railway Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55, the court held:

"If one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer. When a man does an act which in law and fact is a wrongful act, and injury to another results from it as a natural and probable consequence, an action on the case will lie."

In giving the opinion of the court, Mr. Justice Brewer said:

"That which attracts notice on even a casual reading of the bill, the truth of all the allegations in which must be taken, upon this record, to be admitted by the demurrer, is the fact that, while Angle was actively engaged in executing a contract which he had with the Portage Company (a contract whose execution had proceeded so far that its successful completion within the time necessary to secure to the Portage Company its land grant was assured, and when neither he nor the Portage Company was moving or had any disposition to break that contract or stop the work) through the direct and active efforts of the Omaha Company the performance of that contract was prevented, the profits which Angle would have received from a completion of the contract were lost to him, and the land grant to the Portage Company was wrested from it. Surely it would seem that the recital of these facts would carry with it an assurance that there was some remedy which the law would give' to Angle and the Portage Company for the losses they had sustained, and that such remedy would reach to the party (the Omaha Company) by whose acts these losses were caused. That there were both wrong and loss is beyond doubt. And as said by Croke, J., in Baily v. Merrell, 3 Bulst. 94, 95: 'Damage without fraud gives no cause of action; but where these two do concur and meet together, there an action lieth.' * * * That this was a wrongful interference on the part of the Omaha Company, and that it resulted directly in loss to the contractor and to the Portage Company, is apparent. It is not an answer to say that there was no certainty that the contractor would have completed his contract, and so earned these lands for the Portage Company. If such defense were tolerated, it would always be an answer in case of any wrongful interference with the performance of a contract; for there is always that lack of certainty. It is enough that there should be, as there was here, a reasonable assurance, considering all the surroundings, that the contract would be performed in the manner and within the time stipulated, and so performed as to secure the land ⊢⌐ the company. It certainly does not lie in the mouth of a wrongdoer, in t. . face of such probabilities as attend this case, to say that perhaps the contract would not have been completed even if no interference had been had, and that, therefore, there being no certainty of the loss, there is no liability. * * * It has been repeatedly held that, if one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer."

If it be an actionable wrong for a third person to interfere in a contract and induce one of the parties thereto to break it to the injury of the other, can it be said it is not equally a wrong for one of the parties to the contract to invite a third party to unite with him and aid him in breaking the contract in such a way as possibly to escape liability in an action for nonperformance and, gaining his consent, to act together in consummating their agreement? There are many refinements in the law, necessarily so, but courts should be as astute in applying well-known principles of justice to remedy wrongs as the wrongdoers are in devising schemes to perpetrate them.

The acts of the Railway Steel Spring Company clearly constituted an actionable wrong, as damage resulted to the complainant company. The acts were done without justifiable cause. It is immaterial that it was invited to commit these wrongs by the other party to the contract. All this is clear under the authority of Angle v. Chicago, etc., supra. If what the Railway Steel Spring Company did was an actionable wrong, how can it be said that the same acts, done and aided by the Detroit Company, did not constitute an actionable wrong on its part? As the two defendant companies acted in concert, and took part in the several acts constituting the wrong and in consummating it, to my mind both are liable on precisely the same grounds. When two parties unite and act in concert by agreement to commit a wrong, and it is consummated, the injured party may sue one alone, or both in one action, or each in a separate action.

In 2 Addison on Torts, 739, 740, the author says:

"A conspiracy to do an unlawful act and the doing of the act in pursuance of the conspiracy to the damage of the plaintiff create a good cause of action against all the parties to the conspiracy. A criminal proceeding by way of indictment lies for the mere act of conspiring, but a civil action is not maintainable unless the plaintiff had been aggrieved, or has sustained 'actual legal damage' by some overt act done in pursuance of the conspiracy. Where the plaintiff's declaration of his cause of action set forth that he exercised the profession of an actor, and was engaged to perform in the character of Hamlet, in Covent Garden Theater, and that the defendants and others maliciously conspired together to prevent the plaintiff from so performing, and from exercising his profession in the theater, and in pursuance of the conspiracy hired and procured divers persons to go to the theater and hoot the plaintiff, and the persons so hired did, in pursuance of the conspiracy, go to the theater and hoot the plaintiff, and interrupted his performance, and prevented him from exercising his profession, and thereby caused the plaintiff to lose his engagement and divers gains and emoluments, and to be brought into public scandal and disgrace, it was held that the declaration disclosed a good cause of action."

He cites Gregory v. Brunswick, 6 M. & Gr. 205.

Suppose that the employer of the actor, desiring to drive him out of his employment and cause him to abandon or refuse to perform his contract, had invited these parties to come to his theater and hoot and hiss the actor without justifiable cause, and they had done so and prevented him from acting, etc., would not the action have been sustained against all, including the employer? Would it have been a defense to the employer to say that he was the em-

ployer and had only broken his contract and must be sued on the contract for a breach thereof?

. In 8 Cyc. 650, the law is thus stated, citing many cases:

"Intentionally to do that which is calculated, in the ordinary course of events, to damage, and which does in fact damage another in that other person's property or trade, is actionable if done without just cause or excuse. Such intentional action, when done without just cause or excuse, is what the law calls a 'malicious wrong.'"

This complaint states a good cause of action against both the defendants, and one cause of action only.

The demurrers are overruled, with costs.