# FEDERAL TRADE COMMISSION *v.* RAYMOND BROS.-CLARK COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 102.  Argued November 27, 1923.—Decided January 7, 1924.

In the absence of any element of conspiracy, monopoly or oppression, a wholesale dealer, in interstate commerce, has a right to stop dealing with a manufacturer if he thinks that the manufacturer is undermining his trade by selling to a competing wholesaler or to a retailer competing with his customers; and such conduct is not an unfair method of competition within the meaning of the Trade Commission Act.    P. 572.

280 Fed. 529, affirmed.

CERTIORARI to a decree of the Circuit Court of Appeals which set aside an order of the Federal Trade Commission.

*Mr. Adrien F. Busick,* with whom *Mr. Solicitor General Beck* and *Mr. W. H. Fuller* were on the brief, for petitioner.

The decision of this Court in *Federal Trade Comm.* v. *Gratz,* 253 U. S. 421, interpreted the substantive law of the Trade Commission Act as creating two classes of practices which are unfair within the meaning of the statute, first, those which are contrary to good morals because characterized by deception, bad faith, fraud, or op-

pression, and, second, those which have a dangerous tendency unduly to hinder competition. Subsequently, in *Federal Trade Comm.* v. *Beech-Nut Co.*, 257 U. S. 441, this Court held the "Beech-Nut System of Merchandising" to be an unfair method of competition because of its effect to restrict competition. Again, in *Federal Trade Comm.* v. *Winsted Hosiery Co.*, 258 U. S. 483, the use of false brands or labels was held to be an unfair method of competition, the basis of the illegality of the method being its deceptive character. These decisions firmly establish the criteria for the interpretation of the act.

This proceeding involves "involuntary" restraints of trade; and control of the market by respondent need not be shown. *United States* v. *Patten*, 226 U. S. 525; *Loewe* v. *Lawlor*, 208 U. S. 274; *United States* v. *Keystone Watch Case Co.*, 218 Fed. 502; *Steers* v. *United States*, 192 Fed. 1.

The practice burdens interstate commerce, hinders competition, and destroys that equality of opportunity to compete which it was the purpose of the Trade Commission Act to preserve. *Eastern States Lumber Assn.* v. *United States*, 234 U. S. 600; *Duplex Co.* v. *Deering*, 254 U. S. 443.

The evidence clearly shows that there was an existing interstate traffic between manufacturers of various States and the Basket Stores Company, and that for the direct purpose of destroying such traffic petitioner sought to induce the Snider Company to cease selling its products to the Basket Stores Company. Obviously, if respondent's efforts had been successful, there would have been no more sales by the Snider Company to the Basket Stores Company, and interstate traffic between them would have ceased, the free flow of commerce between the States would have been obstructed, and the trade of the Basket Stores Company would have been restrained. See *Swift & Co.* v. *United States*, 196 U. S. 375; *Montague & Co.* v. *Lowry*, 193 U. S. 38.

The methods employed were oppressive within the *Gratz Case.* If a corporation engaged in interstate commerce may employ the strength of its buying power to prevent another from procuring a commodity in interstate commerce upon which the very existence of the latter's business depends, it may follow such practices until the dealer against whom they are directed finds himself unable to purchase any commodities and automatically retires from business. By a similar line of conduct, a rival could not only be prevented from purchasing commodities but from securing advertising space in newspapers and magazines, and the channels of commerce completely closed to him.

Such methods destroy that equality of opportunity to compete in business which it was the great purpose of the Trade Commission Act and of cognate statutes to preserve. *United States* v. *American Oil Co.,* 262 U. S. 371; *United States* v. *Freight Assn.,* 166 U. S. 290; *United States* v. *International Harvester Co.,* 214 Fed. 987.

Traders should have large freedom of action in the conduct of their own affairs. *Federal Trade Comm.* v. *Curtis Pub. Co.,* 260 U. S. 568; *Federal Trade Comm.* v. *Sinclair Refg. Co.,* 261 U. S. 463. But the line which separates fair competition from that which is unfair is clear. *Hitchman Coal Co.* v. *Mitchell,* 245 U. S. 229; *American Bank & Trust Co.* v. *Federal Reserve Bank,* 262 U. S. 643; *Sears-Roebuck Case,* 258 Fed. 307; *National Harness Manufacturers Case,* 268 Fed. 705.

The use of the methods here employed constitutes an unwarranted interference with the Basket Stores' right at common law to a free market. *Martell* v. *White,* 185 Mass. 255; *Brown & Allen* v. *Jacobs Co.,* 115 Ga. 429; *Booth* v. *Burgess,* 72 N. J. Eq. 181; *Quinn* v. *Leathem,* (1901) A. C. 495; Pollock, The Law of Torts, 10th ed., p. 163; *Auburn Draying Co.* v. *Wardell,* 227 N. Y. 1; *People* v. *Butler,* 221 Mich. 626.

No question of respondent's right to refuse to deal with others is involved in this case.

There was an illegal interference with established business relations.   *Truax* v. *Raich,* 239 U. S. 33, 38; *Hitchman Coal Co.* v. *Mitchell,* 245 U. S. 229, 252.

The practice being inherently illegal, no tendency to monopoly need be proven.

The existence of public interest in the case has been committed by the statute to the Commission as a matter preliminary to the issuance of a complaint and moving it to action or nonaction.   There is ample public interest here.

*Mr. Emmet Tinley, Mr. W. E. Mitchell, Mr. D. L. Ross* and *Mr. Edwin D. Mitchell* appeared for respondent.

Mr. Justice SANFORD delivered the opinion of the Court.

This writ brings up for review a decree of the Circuit Court of Appeals which set aside an order of the Federal Trade Commission requiring the Raymond Bros.-Clark Company to desist from a method of competition held to be prohibited by the Trade Commission Act of September 26, 1914, c. 311, 38 Stat. 717.

By § 5 of·that act " unfair methods of competition " in interstate commerce are declared unlawful, and the Commission is empowered and directed to prevent their use.

The Commission, in January, 1920, issued a complaint charging the Raymond Company with acts and practices the purpose and effect of which were to cut off the supplies purchased by the Basket Stores Company, a competitor, from the T. A. Snider Preserve Company, stifle and prevent competition by the Stores Company, and interfere with the right of the Stores Company and the Snider Company to deal freely with each other in interstate commerce.   The Raymond Company answered, and evidence was taken.   The Commission made a report, stating its findings of fact and conclusions.

The material facts shown by the findings are: The Raymond Company and the Stores Company are dealers in groceries, with their principal places of business and warehouses in Nebraska. They buy groceries in wholesale quantities from manufacturers in other States, which are shipped to their warehouses and resold to customers within and outside of Nebraska. Each does an annual business of approximately $2,500,000. The Raymond Company sells exclusively at wholesale. The Stores Company operates a chain of retail stores, but also sells at wholesale. In its wholesale trade, which constitutes about ten per cent. of its total business, it is a competitor of the Raymond Company. The Snider Company is a manufacturer of groceries, with its office in Illinois. In September, 1918, it sold groceries to the Raymond Company, the Stores Company and other neighboring dealers. These groceries were shipped in interstate commerce in a " pool " car to the Raymond Company, for distribution among the several purchasers.[1] The Raymond Company, upon thus learning of the sale to the Stores Company, delayed the delivery of its portion of the groceries, to the hindrance and obstruction of its business, and wrote to the Snider Company, protesting against the sale direct to the Stores Company and asking for the allowance of the jobber's profit on such sale.[2] Later, the Raymond Company declined to pay the Snider Company until this commission was allowed, and threatened to cease business with it and return all goods purchased from it then

---

[1] The facts that the Snider Company's office is in Illinois and that it shipped these groceries in interstate commerce, are not stated in the findings; but they otherwise appear in the record and are not disputed.

[2] It otherwise appears from the record that the ground of its protest and claim was its assertion that the Stores Company was " nothing but a retail store."

in stock, unless it allowed this commission and discontinued direct sales to the Stores Company; and, thereafter, an attempted settlement of the controversy having failed, the Raymond Company ceased to purchase from the Snider Company.

The conclusions of the Commission were: that the conduct of the Raymond Company tended to, and did, unduly hinder competition between the Stores Company and others similarly engaged in business; that the purpose of the Raymond Company was also to press the Snider Company to a selection of customers, in restraint of its trade, and to restrict the Stores Company in the purchase of commodities in competition with other buyers; and that the conduct of the Raymond Company tended to the accomplishment of this purpose.

The Commission thereupon adjudged that the method of competition in question was prohibited by the act, and ordered the Raymond Company to desist from directly or indirectly—hindering or preventing any person, firm, or corporation in or from the purchase of groceries or like commodities direct from the manufacturers or producers, in interstate commerce, or attempting so to do; hindering or preventing any manufacturer, producer, or dealer in groceries and like commodities in or from the selection of customers in interstate commerce, or attempting so to do; and influencing or attempting to influence any such manufacturer, producer, or dealer not to accept as a customer any firm or corporation with which, in the exercise of a free judgment, he has, or may desire to have, such relationship.

Upon a petition of the Raymond Company for review of this order, the Circuit Court of Appeals held that the findings of fact did not show an unfair method of competition by the Raymond Company as to the Stores Company or others similarly engaged in business. The court said: " There is no finding that petitioner combined with

any other person or corporation for the purpose of affecting the trade of the Basket Stores Company, or others similarly engaged in business. So far as petitioner itself is concerned, it had the positive and lawful right to select any particular merchandise which it wished to purchase, and to select any person or corporation from whom it might wish to make its purchase. The petitioner had the right to do this for any reason satisfactory to it, or for no reason at all. It had a right to announce its reason without fear of subjecting itself to liability of any kind. It also had the unquestioned right to discontinue dealing with any manufacturer, . . . for any reason satisfactory to itself or for no reason at all. Any incidental result which might occur by reason of petitioner exercising a lawful right cannot be charged against petitioner as an unfair method of competition." The decree setting aside the order of the Commission was thereupon entered. 280 Fed. 529.

We pass, without determination, the preliminary contentions of the Raymond Company, that the findings of the Commission are not supported by the testimony, in many respects,[3] and that, as both the complaint and the findings of fact relate merely to a controversy between it and a single manufacturer, over a single shipment of merchandise, the broad order of the Commission, commanding it to desist from all acts of like character with " the

---

[3] The Raymond Company insists that the testimony shows, among other things, that it did not intentionally delay the delivery of the groceries to the Stores Company; that the Stores Company is not its competitor in the wholesale business, but engaged in the retail business, selling groceries to consumers in competition with other retail dealers to whom the Raymond Company sells at wholesale; and that it did not threaten the Snider Company with the withdrawal of patronage if it continued to sell to the Stores Company, but merely expressed surprise at the change made by the Snider Company from its former policy of selling only to wholesalers, and declared that it would not have made its own purchases had it known of this change.

entire commercial world " is improvident, and can not be sustained.[4]

The gravamen of the contention in behalf of the Commission is that the conduct of the Raymond Company, acting alone and not in combination with others, in threatening the withdrawal of patronage from the Snider Company if it continued to sell goods to the Stores Company, constituted an unfair method of competition, oppressive in its character, unlawful when tested by common law criteria, and having a dangerous tendency unduly to hinder competition.

The words " unfair method of competition," as used in the act, " are clearly inapplicable to practices never heretofore regarded as opposed to good morals because characterized by deception, bad faith, fraud or oppression, or as against public policy because of their dangerous tendency unduly to hinder competition or create monopoly." *Federal Trade Comm.* v. *Gratz,* 253 U. S. 421, 427; *Federal Trade Comm.* v. *Beech-Nut Co.,* 257 U. S. 441, 453. If real competition is to continue, the right of the individual to exercise reasonable discretion in respect of his own business methods, must be preserved. *Federal Trade Comm.* v. *Gratz, supra,* p. 429.

The present case discloses no elements of monopoly or oppression. So far as appears the Raymond Company has no dominant control of the grocery trade, and competition between it and the Stores Company is on equal terms. Nor do we find that the threatened withdrawal of its trade from the Snider Company was unlawful at the

---

[4] The Circuit Court of Appeals stated, in the outset of its opinion, that, in any event, as the proceeding related to the use of an unfair method of competition against the Stores Company, the order of the Commission, being " as broad as the business world," would have to be modified, if sustained in any particular. See *Federal Trade Comm.* v. *Gratz,* 253 U. S. 421, and *Western Sugar Refinery Co.* v. *Federal Trade Comm.* (C. C. A.), 275 Fed. 725, 732.

common law, or had any dangerous tendency unduly to hinder competition.

It is the right, " long-recognized ", of a trader engaged in an entirely private business, " freely to exercise his own independent discretion as to parties with whom he will deal." *United States* v. *Colgate & Co.,* 250 U. S. 300, 307. See also *United States* v. *Freight Assn.,* 166 U. S. 290, 320; *Dueber Watch-Case Co.* v. *Howard Watch Co.* (C. C. A.), 66 Fed. 637, 645; *Great Atlantic Tea Co.* v. *Cream of Wheat Co.* (C. C. A.) 227 Fed. 46, 48; *Wholesale Grocers' Ass'n* v. *Trade Comm.* (C. C. A.), 277 Fed. 657, 664; *Mennen Co.* v. *Trade Comm.* (C. C. A.), 288 Fed. 774, 780; *Booth* v. *Burgess,* 72 N. J. Eq. 181, 190; and 2 Cooley on Torts, (3d ed.) 587. Thus a retail dealer " has the unquestioned right to stop dealing with a wholesaler for reasons sufficient to himself." *Eastern States Lumber Assn.* v. *United States,* 234 U. S. 600, 614; *United States* v. *Colgate & Co., supra,* p. 307. He may lawfully make a fixed rule of conduct not to buy from a producer or manufacturer who sells to consumers in competition with himself. *Grenada Lumber Co.* v. *Mississippi,* 217 U. S. 433, 440. Or he may stop dealing with a wholesaler who he thinks is acting unfairly in trying to undermine his trade. *Eastern States Lumber Assn.* v. *United States, supra,* p. 614; *United States* v. *Colgate & Co., supra,* p. 307. Likewise a wholesale dealer has the right to stop dealing with a manufacturer " for reasons sufficient to himself." And he may do so because he thinks such manufacturer is undermining his trade by selling either to a competing wholesaler or to a retailer competing with his own customers. Such other wholesaler or retailer has the reciprocal right to stop dealing with the manufacturer. This each may do, in the exercise of free competition, leaving it to the manufacturer to determine which customer, in the exercise of his own judgment, he desires to retain.

A different case would of course be presented if the Raymond Company had combined and agreed with other

wholesale dealers that none would trade with any manufacturer who sold to other wholesale dealers competing with themselves, or to retail dealers competing with their customers. An act lawful when done by one may become wrongful when done by many acting in concert, taking on the form of a conspiracy which may be prohibited if the result be hurtful to the public or to the individual against whom the concerted action is directed. *Grenada Lumber Co.* v. *Mississippi, supra,* p. 440; *Eastern States Lumber Assn.* v. *United States, supra,* p. 614. See also *Binderup* v. *Pathe Exchange, ante,* 291.

We conclude that the Raymond Company in threatening to withdraw its trade from the Snider Company exercised its lawful right, and that its conduct did not constitute an unfair method of competition within the meaning of the act. The decree of the Circuit Court of Appeals is accordingly *Affirmed.*