**BALLARD OIL–BURNING EQUIPMENT CO. v. MEXICAN PETROLEUM CORPORATION et al.**

District Court, D. Massachusetts. October 19, 1927.

No. 2783.

**1. Monopolies ⟨⟩17(1)—Dealer's refusal to sell oil to oil-burner manufacturer, under arrangement with competitor, held not conspiracy to restrain trade.**

Where corporate defendant M., the only seller of fuel oil in territory of plaintiff, a manufacturer of oil-burning equipment and seller of fuel oil therefor, agreed with F., plaintiff's sole competitor in manufacture of equipment, to form a new corporation, in which both should have an interest, and that M. should sell oil only to such new corporation, which would refuse to sell oil to plaintiff, so as to drive plaintiff out of business, defendants were not guilty of conspiracy in restraint of trade under the anti-trust laws, since plaintiff's injuries resulted solely from M.'s refusal to sell to it; right of a single dealer to refuse to sell to any one not being affected by fact that nobody else sells in that field.

**2. Monopolies ⟨⟩17(1)—Defendants obtaining control of sole source of oil, to cause it to break contract with plaintiff's subsidiary, held not guilty of conspiracy to restrain trade.**

Where corporate competitor of plaintiff, a manufacturer of oil-burning equipment and seller of fuel oil therefor, and another defendant, selling fuel oil, obtained control of the only other fuel oil dealer in plaintiff's territory, for purpose of causing it to break its contract with plaintiff's subsidiary, and thereby deprive plaintiff indirectly of its supply of oil and destroy its business, they were not guilty of conspiracy in restraint of trade under anti-trust laws, in absence of combination to monopolize or restrict trade in fuel oil, or to exclude plaintiff therefrom.

**3. Pleading ⟨⟩34(4)—Doubt as to sufficiency of declaration will be resolved against declaration on demurrer, where trial will probably be long.**

On demurrer, doubt as to sufficiency of declaration will be resolved against plaintiff, and demurrer sustained, where case is such that trial thereof will probably be long and burdensome on the parties and on the court; parties then being able promptly and at reasonable expense to get a final determination.

At Law. Action by the Ballard Oil-Burning Equipment Company against the Mexican Petroleum Corporation and others. On defendants' demurrer to declaration. Demurrer sustained.

MORTON, District Judge. This is an action for treble damages under the anti-trust laws, founded upon an alleged conspiracy, or conspiracies, in restraint of trade. The original declaration has been twice amended after hearings on demurrers, and is now to be regarded as a final statement of the plaintiff's case, at least in substance. The principal question raised by the demurrers of the several defendants is whether any case is stated in the declaration.

The alleged business conditions described at length in the declaration may be more briefly stated as follows: In 1919 the plaintiff and the Fess Company were engaged in the New England field in the business of making and selling oil-burning equipment for low-pressure boilers. They were competing with each other, and between them they did most of that business in the territory stated and furnished most of the fuel oil for such installations. In selling oil-burning equipment, it is necessary to have fuel oil to sell with the equipment. There was at this time in this territory only one source of supply of fuel oil suitable for such purposes, viz. the Mexican Petroleum Company. Each of these two companies bought fuel oil from it and resold to their customers. The Mexican Company restricted them to sales for low-pressure boilers, such as are used mostly for heating purposes. It reserved to itself the high-pressure trade, and did not permit either the plaintiff or the Fess Company to sell for high-pressure use. The plaintiff was passing the Fess Company in the competition between them.

In that situation, the defendants here who were interested in the Fess Company, and other defendants who were interested in the Mexican Company, conceived the plan of forming a new corporation, called the Petroleum Heat & Power Company, in which both the Fess group and the Mexican group should have interests, and of having the Mexican Company sell to this new company alone fuel oil for low-pressure use. This plan was carried out. When the plaintiff's contract with the Mexican Company for fuel oil expired on February 15, 1922, it was not renewed. Under its contract with the Mexican Company the plaintiff was prohibited from buying oil from any other person, and

this refusal to renew by the Mexican Company put the plaintiff to great disadvantage. Foreseeing, however, the failure of its supply from the Mexican Company, the plaintiff had organized a subsidiary (the Ballard Oil Terminal Company) to obtain fuel oil from other sources, and while the plaintiff's contract with the Mexican Company was still in force the subsidiary made a contract with the New England Oil-Refining Company, which in 1921 came into the New England field as a competitor of the Mexican Company, to supply its requirements up to 2,000,000 barrels a year for 15 years, this contract to begin shortly after the expiration of the plaintiff's contract with the Mexican Company. The plaintiff continued in business getting fuel oil in this way, but losing all profit on it, because that was taken by the subsidiary; the plaintiff selling at actual cost. As the plaintiff did not own all the stock in the subsidiary, it lost by the new arrangement. This left the plaintiff competing with the Heat & Power Company and getting fuel oil for its customers from the New England Company through the Terminal Company.

The declaration further alleges that the parties interested in the Heat & Power Company then conceived the plan of cutting off the plaintiff's new supply of fuel oil, by getting control of the New England Company and having it break its contract with the plaintiff's subsidiary; that this scheme was carried out and the New England Company refused to deliver oil under its contract. The Mexican Company and the Heat & Power Company also refused to furnish oil for the plaintiff. This left the plaintiff with no source of fuel oil supply. Lacking it, the plaintiff was unable to continue its business profitably, and was forced to sell out at a large loss, due to the conspiracy or conspiracies to which the defendants were parties.

The declaration is in three counts, the first of which is based on a conspiracy alleged to have begun in the scheme for the organization of the Heat & Power Company, and to have continued until the plaintiff was finally forced out of business, as above described; i. e., a single conspiracy covering the whole period. The second count alleges as a separate conspiracy the first part of the general conspiracy charged in count 1; i. e., a conspiracy ending with the refusal of the Mexican Company to renew its contract with the plaintiff in 1922. The third count alleges as a separate conspiracy the latter part of the general conspiracy charged in count 1; i. e., a conspiracy the object of

which was the destruction of the contract between the plaintiff's subsidiary, the Terminal Company, and the New England Oil Refining Company, and the stoppage of the plaintiff's supplies of fuel oil from that source.

It will be more convenient to discuss the questions raised by the general demurrers by considering first the allegations of separate conspiracies contained in counts II and III.

[1] As to count II: The gist of this is that the parties interested in the Fess Company and the Mexican Company conspired to restrict trade and monopolize commerce in fuel oil at retail and in the fuel oil equipment business in New England, by having the Mexican Company cease to sell fuel oil to the plaintiff and continue to sell it to the Fess Company's successor, the Heat & Power Company; the purpose being to drive the plaintiff out of both branches of its business.

As above stated, all the oil which the Fess Company and the plaintiff were selling came from the Mexican Company. What happened was, on the allegations of the declaration, that the Mexican Company decided to take an interest in the Fess Company, and thereafter to give an advantage to that company's successor by ceasing to supply the plaintiff with oil to sell in competition with it. The *action* by which the plaintiff claims to have been injured was the action solely of the Mexican Company. The conspiracy charged furnishes the reason and the motive for the Mexican Company's conduct. It is not a case where two or more persons selling a certain thing have combined to deprive a user or jobber of it of his supply. Such action would be clearly illegal. I know of no limitation on the right of a single dealer to sell to whom he chooses. (Fed. Trade Com. v. Beech-Nut Packing Co., 257 U. S. 441, 452, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882; Fed. Trade Commission v. Raymond, 263 U. S. 573, 44 S. Ct. 162, 68 L. Ed. 448, 30 A. L. R. 1114); nor do I think that this right is diminished by the circumstances that nobody else is supplying that article in that field. The present case is in principle hard to distinguish from Locker v. Am. Tobacco Co., 195 N. Y. 565, 88 N. E. 289, in which Judge Cullen said (italics mine):

"It is unquestionable that the owner of property may sell to whom he chooses, and equally he may control his agent. A refusal to sell to any particular individual becomes illegal only when it is done in pursuance of a combination *with other owners* to injure the individual with whom they refuse to deal.

In other words, it is the combination of several persons which makes that action illegal which, if done by a single person without any agreement for joint action, would be legal.

"It is contended, however, that a different rule should prevail where a single person or corporation *controls substantially the whole production or output of a staple article*. I do not think the extent of the business can affect the rights of the parties. If it is an inherent right of the owner of property to refuse to sell his property to any particular individual, he cannot be deprived of that right simply because of the magnitude of his business or his wealth."

Another case between the same parties was similarly determined in the federal courts. Locker v. Am. Tobacco Co., 218 F. 447 (C. C. A. 2d Cir.)

The Mexican Company and the Fess Company, and the defendants interested in them, were within their legal rights in making the business arrangement which is described in this count, and their motive, advantage to the Fess Company, was not illegal. This being so, the joint action involved did not constitute a conspiracy in restraint of trade, nor was the restriction by the Mexican Company of its sales of fuel oil for low-pressure use to a single customer, the Heat & Power Company, a monopolization within the meaning of the statute.

No cause of action is stated in count II against any of the defendants, and the demurrer to it must be sustained.

[2] As to count III: The gravamen of this count is that the defendants desired to get control of the New England Oil-Refining Company for the purpose of causing it to break its contract with the plaintiff's subsidiary, the Terminal Company, and thereby to deprive the plaintiff indirectly of its oil supply; the object being to destroy the plaintiff's business in the equipment field and to benefit the Heat & Power Company.

It may well be that this count states an actionable wrong of grave character. See Motley, Green & Co. v. Detroit Steel & Spring Co. (C. C.) 161 F. 389. The present question, however, is whether the facts alleged create liability under the Anti-Trust Laws. There is no direct allegation that the two oil companies combined to monopolize or restrict the trade in fuel oil, nor in agreeing to furnish it for low-pressure use only to the Heat & Power Company, nor that there was any agreement or conspiracy between them to exclude the plaintiff. The

New England Oil Company is not a party to this action, nor is it alleged to have been a party to the conspiracy. As I understand the declaration, the plaintiff's downfall was caused by a conspiracy which brought influence to bear successively on each of the two supply companies, and induced each separately to furnish no fuel oil to or for the plaintiff. The Mexican Company's relation to the conspiracy alleged in this count was as one of the group who planned to get the New England Oil Company to break its contract with the plaintiff's subsidiary, in order to suppress the plaintiff's competition with the Heat & Power Company and to secure for the latter company a monopoly of the retail fuel oil and fuel oil equipment business in the New England states. The alleged conspiracy proceeded, not by unifying and controlling the entire supply of fuel oil available to the plaintiff through the Mexican and New England Companies, but by acting separately on each company to cause each in turn to refuse to supply the plaintiff. Inasmuch as the plaintiff and the Heat & Power Company were the only concerns in their particular field, the elimination of the plaintiff left the Heat & Power Company without competition, and that was the object, as charged, of the conspiracy. As the business was of an interstate character, the conspiracy did affect interstate trade. But this effect was indirect, rather than direct. See Coronado Coal Co. v. United Mine Workers, 268 U. S. 295, at page 310, 45 S. Ct. 551, 69 L. Ed. 963. The denunciatory allegations do not change the real character of what is charged to have been done and by which the sufficiency of the declaration is to be determined. While, as I have said, the conspiracy charged appears to be of an illegal character, and, if proved, might well render all parties to it liable for the injury thereby inflicted on the plaintiff, I am in great doubt whether it is within the purview of the anti-trust statutes, or within the jurisdiction of this court.

[3] As the matter stands, then, count II of the declaration is, in my opinion, clearly bad, and the remaining counts are doubtful. The trial of the case will, I have no doubt, be long and burdensome on the parties and on the court. Under such circumstances, I think that the proper course is to resolve the doubt as to the sufficiency of the declaration against the plaintiff and to sustain the demurrers. The parties will then be able promptly and at a reasonable expense to get a final determination of these basic questions.

So ordered.