## MITCHELL WOODBURY CORPORATION v. ALBERT PICK–BARTH CO., Inc., et al.

District Court, D. Massachusetts. December 5, 1929.

No. 4087.

Sherman L. Whipple, Claude B. Cross, and Edward C. Park, all of Boston, Mass., for plaintiff.

G. Wallace Tibbetts, of Boston, Mass., for Exchange Trust Co., trustee.

Leo S. Hamburger, of Boston, Mass., for defendants Stuart and McDonald.

Edward F. McClennen and Jacob Kaplan, both of Boston, Mass., for defendant Albert Pick-Barth Co.

BREWSTER, J. This is an action brought to recover threefold damages alleged to have been sustained by reason of acts forbidden by the anti-trust laws (U. S. C. tit. 15, § 15 (15 USCA § 15). The plaintiff and two of the defendants are citizens of Massachusetts. The defendant corporation has interposed a pleading entitled "Motion to dismiss, demurrer and answer to the jurisdiction."

Two questions are presented by this pleading:

First. Whether the court can take jurisdiction of the proceeding; there being no diversity of citizenship.

Second. Whether, if the court has jurisdiction, the allegations of the declaration are sufficient to entitle the plaintiff to recover under U. S. C. tit. 15, § 15 (15 USCA § 15).

I understand the rule to be that, unless the allegations are frivolous and colorable only, the court has power to decide all justiciable questions raised by the pleadings, and that the court may proceed to determine whether a cause of action has been stated therein. Binderup v. Pathé Exchange, 263 U. S. 291, 304–306, 44 S. Ct. 96, 68 L. Ed. 308; Moore v. N. Y. Cotton Exchange, 270 U. S. 593, 608, 609, 46 S. Ct. 367, 70 L. Ed. 750, 45 A. L. R. 1370; Swift & Co. v. United States, 196 U. S. 375, 25 S. Ct. 276, 49 L. Ed. 518.

I think the case at bar falls within this rule and that, for the purposes of the case, the defendants' pleadings should be treated as a demurrer to the declaration.

There is in this court precedent for sustaining the demurrer if there is a substantial doubt respecting the sufficiency of the plaintiff's alleged claim. The reason for this is that the questions raised thereby may be determined before the parties have gone to the inconvenience and expense incident to a trial of a case of this character. Ballard Oil-Burning Equipment Co. v. Mexican Petroleum Corp. (D. C.) 22 F.(2d) 434; Rosso v. Freeman (D. C.) 30 F.(2d) 826.

I entertain serious doubts whether the facts alleged, if proved, would entitle the plaintiff to recover under the anti-trust laws. In order to recover, the plaintiff must bring his case within sections 1 or 2 of said title 15. Section 1 forbids conspiracies in restraint of trade or commerce among the several states, and section 2 renders it unlawful for any person to conspire with another to monopolize any part of such trade or commerce. It becomes necessary, therefore, to give consideration to the allegations of the declaration with a view to determining whether the declaration does allege a conspiracy in restraint of trade or commerce or a conspiracy to monopolize any part of such trade or commerce.

To summarize as briefly as possible the somewhat elaborate allegations of the declaration, it is said that the plaintiff, a Massachusetts corporation, in connection with its other business, was engaged in the business of manufacturing, designing, selling, and installing kitchen utensils for hotels, restaurants, cafeterias, clubs, and institutions and in the prosecution of this business it sold in interstate commerce; that the defendant corporation was subsequently organized for the purpose of acting as distributing agent for the products manufactured and sold in interstate commerce by a group of corporations, referred to in the declaration as the Pick-Barth Companies, which engaged in trade and commerce in furnishings and equipment of all sorts for hotels, restaurants, etc., and were the largest and dominating factors therein; that the defendant Stuart had been an officer in plaintiff's corporate predecessor and, until December 31, 1928, was an employee of the plaintiff. He had entered into a contract with the plaintiff whereby he had agreed to purchase, on or before December 31, 1928, for a stipulated price, the business of the kitchen utensil department.

It appears from the contract annexed to the declaration that Stuart had secured the performance of this agreement by a pledge of stock in the predecessor company, which stock the plaintiff had agreed to accept as liquidated damages in case of failure to perform.

The defendant McDonald, up to December 31, 1928, had been employed by the plaintiff as manager of the department. It is alleged that the defendant corporation and the individual defendants, aided and abetted by officers and agents of other of the Pick-Barth Companies, entered into a conspiracy to deprive the plaintiff of the business of its kitchen equipment department and to obtain it for the defendant corporation; that, in pursuance of this conspiracy, the defendant Stuart decided not to purchase the kitchen equipment department of the plaintiff, and on December 31, 1928, the defendants Stuart and McDonald terminated their connection with the plaintiff company and accepted positions with the defendant corporation, becoming managers of its Boston branch. While

remaining in the employ of the plaintiff, the defendants Stuart and McDonald did not disclose to the plaintiff their intention to leave its employ, and secretly solicited business for the defendant corporation and induced other members of the organization to leave the plaintiff without prior notice and enter the employ of the defendant corporation; that, upon leaving, the individual defendants took certain confidential information, records, and specifications, which the defendant corporation received and used. So far as appears from the allegations of the declaration, the only results flowing to the plaintiff from the acts of the defendants were to deprive the plaintiff of the services of members of its staff in its kitchen equipment department, compelling it to organize and train a new staff. In the meantime, it lost profits on sales which it otherwise would have made, thereby diminishing the value of the good will of the business in that department.

■ It is nowhere alleged in the declaration in express terms that the conspiracy was one to restrain or monopolize interstate commerce. The nearest approach to such allegation is the statement that the Pick-Barth Companies "constituted the largest and a dominating factor in" the trade and commerce in furnishings and equipment for hotels, restaurants, etc., throughout the several states of the United States, and that the defendant, aided and abetted by these companies, entered into a conspiracy to restrain the competition of the plaintiff in trade and commerce in kitchen equipment and kitchen utensils among the several states. If the facts alleged in the declaration fail to show a conspiracy, or combination, falling within the condemnation of the act, nothing is gained by general allegation to that effect. Tilden v. Quaker Oats Co. (C. C. A.) 1 F.(2d) 160; Blumenstock Bros. Adv. Agency v. Curtis Publishing Co., 252 U. S. 436, 441, 40 S. Ct. 385, 64 L. Ed. 649.

It is important to ascertain the real character of the conspiracy, as gathered from the facts alleged. It would seem a fair statement to say that the conspiracy was little more than an attempt on the part of the defendant corporation to enter into competition with the plaintiff and secure some of plaintiff's business by resorting to methods which might be deemed to come within the definition of unfair competition. The plaintiff cannot question the right of the Pick-Barth group to enter into competition with it and to that end to organize a distributing agent with a branch office in Boston, nor can the plaintiff doubt the right of the defendant cor-

poration to employ whomsoever it chose to manage and conduct the Boston branch. Up to this point competition would be stimulated rather than restrained. The legal wrong, if any, is found in the conduct of the individual defendants while still in the employ of the plaintiff, for which it must be assumed the law gives the injured party ample redress. The plaintiff undertakes to invoke the punitive anti-trust laws of the United States, by alleging that these wrongs were committed pursuant to a conspiracy entered into by the defendants and certain representatives of a group of companies that was said to constitute a dominating factor in the trade.

■ As I read the adjudications of the court dealing with the anti-trust laws, I cannot see how plaintiff's attempt can succeed, even assuming, as I must, that every allegation is proved. It will be noted that, according to the allegations, (1) the business, which was affected by the alleged conspiracy, was that of manufacturing, designing, selling, and installing kitchen utensils; and (2) that the acts complained of tended to embarrass the plaintiff in the conduct of its business in that department until it could reorganize its forces. While it must be assumed, for the purposes of the case, that the plaintiff manufactured, designed, and sold, in part at least, with a view to transporting and installing utensils and fixtures in states other than Massachusetts, such interstate commerce was incidental to the plaintiff's business, and the acts of the defendants, if proved to have been pursuant to a conspiracy, had no direct relation to such interstate commerce.

It would seem to me that the case is governed by such cases as United Mine Workers of America v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, and United Leather Workers' International Union v. Herkert & Meisel Trunk Co., 265 U. S. 457, 44 S. Ct. 623, 627, 68 L. Ed. 1104, 33 A. L. R. 566. In both of those cases there was an unlawful conspiracy to prevent, in one case mining, and in the other manufacturing, of the plaintiff's product, and it was held that, although the product was ultimately to be shipped in interstate commerce, since there was no actual, or attempted, interference with the free transport of the products from the mine or factory to other states, or with their sales in those states, the conspiracy did not come within the scope of the anti-trust laws. In the latter case, Chief Justice Taft observes that "the mere reduction in the supply of an article to be shipped in interstate commerce, by the illegal or tortious prevention of its manufacture, is ordi-

narily an indirect and remote obstruction to that commerce. It is only when the intent or necessary effect upon such commerce in the article is to enable those preventing the manufacture to monopolize its supply, control its price or discriminate as between its would-be purchasers, that the unlawful interference with its manufacture can be said directly to burden interstate commerce."

If it be said that the case at bar is distinguishable from these cases on the ground that in the case at bar the effect of the conspiracy was to diminish sales rather than to curtail production, we are met with Industrial Association v. United States, 268 U. S. 64, 45 S. Ct. 403, 407, 69 L. Ed. 849, which extended the doctrine of the cited cases to activities of an association which operated to restrict the sales in California of products manufactured outside. In the course of his opinion, Mr. Justice Sutherland, in dealing with the claim that the permit requirement of the association for California produced materials interfered with the free movement of materials and supplies from other states, made these observations:

"This is to say, in effect, that the building contractor, being unable to purchase the permit materials, and consequently unable to go on with the job, would have no need for plumbing supplies, with the result that the trade in them, to that extent, would be diminished. But this ignores the all-important fact that there was no interference with the freedom of the outside manufacturer to sell and ship or of the local contractor to buy. The process went no further than to take away the latter's opportunity to use, and, therefore, his incentive to purchase. The effect upon, and interference with, interstate trade, if any, were clearly incidental, indirect and remote—precisely such an interference as this court dealt with in United Mine Workers v. Coronado Co., supra, and United Leather Workers v. Herkert, 265 U. S. 457, 44 S. Ct. 623, 68 L. Ed. 1104, 33 A. L. R. 566."

Whatever conspiracy may be found to be alleged in plaintiff's declaration, the effect of such conspiracy upon interstate commerce would be, at best, remote and incidental. Blumenstock Bros. Adv. Agency v. Curtis Publishing Co., supra; Silverstein v. Tailors' Union (C. C. A.) 284 F. 833; Konecky v. Jewish Press (C. C. A.) 288 F. 179; Æolian Co. v. Fischer (D. C.) 35 F.(2d) 34.

Moreover, in defining the scope of the anti-trust laws, we ought not to overlook the purposes for which they were enacted. It may be well to recall what Chief Justice White said in Wilder v. Corn Products Refining Co., 236 U. S. 165, 35 S. Ct. 398, 401, 59 L. Ed. 520. When referring to the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15), he said:

"Founded upon broad conceptions of public policy, the prohibitions of the statute were enacted to prevent not the mere injury to an individual which would arise from the doing of the prohibited acts, but the harm to the general public which would be occasioned by the evils which it was contemplated would be prevented. * * *"

During the temporary period of disorganization, the power of the plaintiff to compete may have been weakened, but it could not be said that competition was destroyed to such an extent that it became injurious to any public interest which the anti-trust laws were designed to protect. A combination or conspiracy is not unlawful unless it destroys competition to an extent injurious to the public interest. United States v. United Shoe Machinery Co., 247 U. S. 32, 38 S. Ct. 473, 62 L. Ed. 968.

The conspiracy left the plaintiff with its liberty unimpaired to seek customers wherever it chose, and customers were equally free to buy of the plaintiff. It is not suggested that the conspiracy in any way affected the price the public would have to pay for commodities, nor do I think it possible to assert that a monopoly in the trade resulted from the conspiracy.

It cannot be said in this case, as was said by the court in Ballard Oil Terminal Corp. v. Mexican Petroleum Corp. (C. C. A.) 28 F.(2d) 91, 99 that "the necessary result of such conspiracy was to restrict the liberty of the plaintiff to engage in business."

The allegations of the declaration would seem to reveal rather a private injury which the plaintiff had sustained as a result of alleged wrongs, having no public significance whatever, and having no direct or material bearing upon interstate commerce. A "statute intended to reach and suppress real interferences with the free flow of commerce among the states" ought not to be extended to a situation such as is presented by plaintiff's statement of its claim. Industrial Ass'n v. United States, supra.

My conclusion therefore is that, upon proof of the allegations set out in its declaration, the plaintiff would not be entitled to recover under section 15 of title 15 of the U. S. Code (15 USCA § 15).

The demurrer of the defendant corporation is sustained.