**SPERRY RAND CORPORATION,**
Plaintiff,

v.

**NASSAU RESEARCH AND DEVELOPMENT ASSOCIATES, Inc., and John C. McGregor, Defendants.**

**Civ. A. No. 16151.**

United States District Court
E. D. New York.

June 6, 1957.

Reargument Denied July 9, 1957.

---

Brumbaugh, Free, Graves & Donohue, New York City, by Walter H. Free, New York City, of counsel, for plaintiff.

Delavan Smith, New York City, for defendants.

BYERS, District Judge.

This is a plaintiff's motion to dismiss a counterclaim and strike a defense proffered as part of a second amended answer. A previous pleading of the same general character was stricken by order of Judge Rayfiel dated March 12, 1957, D.C., 149 F.Supp. 93, 94, with leave to file a second amended answer and counterclaim, reserving to the plaintiff the right to make an appropriate motion addressed thereto. In granting the leave sought by the defendant, the judge said:

"However, a reading of the proposed counterclaim reveals that it is so indefinite, and so utterly lacking in specificity as to be defective on its face."

The present task is to compare the two pleadings to ascertain if the defects referred to have been remedied.

The action is for alleged infringement by defendants of five listed patents said to be owned by plaintiff. An injunction is sought, damages, and attorneys' fees.

The defenses are invalidity and, seemingly non-infringement.

The asserted counterclaim alleges violation by plaintiff of the Sherman Act, 15 U.S.C.A. § 1, the Robinson-Patman Act, 15 U.S.C.A. § 13a; and the Clayton Act, 15 U.S.C.A. § 15.

The question for decision is whether the proposed pleading now alleges facts sufficient to enable it to survive the earlier ruling.

The paragraphs involved are:

*Thirty-first and Thirty-second:* As to both, the original charge is of conspiracy in violation of the Sherman Act. The alleged conspirators were said to be the plaintiff by its officers, etc., "together with other persons not presently known to the corporate defendant."

The revised designation of conspirators is of the plaintiff "together with one S. C. Yeaton and one W. G. Newman as well as with other persons not presently known to the corporate defendant."

The *Thirty-second* paragraph is changed only to add the names of Yeaton and Newman; the activities of plaintiff and the persons named with others are said to comprise a plan to control and restrict the sale of radar and microwave equipment, to the prejudice of the public.

The insertion of the names of the two individuals might be thought to introduce a hitherto missing element in the proposed pleading, except for the conceded fact that they are employees of the plaintiff. It is true that they are not so designated in the proposed pleading, but are thus described in the defendants' brief on this motion (p. 2):

"At this point, Sperry, (plaintiff) submitting to certain schemes of its employees, Yeaton & (sic) Newman, directed attempts to crush the new company (the corporate defendant)."

The question then is whether a conspiracy under the Sherman Act is pleaded; that is, whether Sperry could have conspired with itself.

The answer is necessarily in the negative. See Nelson Radio & Supply Co. v. Motorola, Inc., 5 Cir., 200 F.2d 911; Cott Beverage Corp. v. Canada Dry Ginger Ale, Inc., D.C., 146 F.Supp. 300.

In the latter case, as in this, there is no allegation of a monopoly under Sec. 2 of the Sherman Act, 15 U.S.C.A. § 2. As to this paragraph, the motion is granted.

*Thirty-third:* This paragraph has been recast so as to allege five instead of two forms of oppression on the part of the plaintiff. The original subd. (a) alleged that the plaintiff had exercised coercion upon its customers to force them from doing business with the defendant. The new subdivision has to do with Peerless Instrument Co. and Adolf Fischer said to have been in January, 1953 "substantial suppliers and sub-contractors of the plaintiff." (It is assumed that they were purchasers of plaintiff's products.)

That the former had "agreed to give financial and manufacturing assistance and orders for material to the defendant or defendant's successor." That "pursuant to the illegal monopoly, hereinbefore set forth, (as stated there is no allegation of monopoly), S. C. Yeaton, W. G. Newman and others, in concert with plaintiff, threatened to withdraw the business of plaintiff from the aforesaid Peerless Instrument Co. and Adolf Fischer unless the latter refrained from engaging in business transactions with the defendant or defendant's successor."

The added subd. (d) is that as a result the named enterprises "were restrained from doing business with the defendant and defendant's successor."

The foregoing is specific enough to avoid the criticism of the original pleading as quoted above. Whether it states a valid claim for relief remains to be considered.

The plaintiff is entitled to pick and choose its customers, not being a public service corporation. See Federal Trade Commission v. Raymond Bros.-Clark Co., 263 U.S. 565, 44 S.Ct. 162, 68 L.Ed. 448.

The court there says that no elements of monopoly or oppression were revealed in the record before it, and that (263 U.S. at page 573, 44 S.Ct. at page 164): "It is the right, 'long recognized,' of a trader engaged in an entirely private business, 'freely to exercise his own independent discretion as to the parties with whom he will deal'" (citing many cases). The only statute there involved was the Trade Commission Act of September 26, 1914, 15 U.S.C.A. § 41.

The subject was more recently discussed in Lorain Journal Co. v. U. S., 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162, a Sherman Act case in which a newspaper publisher was enjoined from conduct found to be intended to monopolize interstate commerce, by forcing its advertisers to boycott a competing radio station.

The opinion discusses the publisher's argument that it was entitled to refuse to accept advertising from anyone. The court recognizes the right, but says that the latter is a qualified one, not absolute or exempt from regulation (342 U.S. at page 155, 72 S.Ct. at page 187). "Its exercise as a purposeful means of monopolizing interstate commerce is prohibited by the Sherman Act. * * * 'In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal' " (citing cases).

Since there is no factual allegation of a commercial monopoly on the part of Sperry, its right to continue to do business with Peerless or Fischer, or to refrain therefrom, is recognized by the law; and its contingent exercise seems not to have been held to constitute a violation of the Sherman Act.

Since however this motion is addressed to a pleading, and can in no wise involve conjectures as to what the proof at trial might or might not disclose, it seems proper to point out that the exercise of the right for which plaintiff contends, does not furnish an automatic answer to the present problem.

The defendant alleges what may be likened to a secondary boycott, the oppressive nature of which does not find ready tolerance in equity. Since the plaintiff does possess that restricted form of monopoly which the law sanctions, it cannot be now held that the defendant would not be able to demonstrate at the trial the kind of an effort to extend that monopoly which the admonition quoted from the Lorain case would quick-en into action. It is understood of course that the monopoly there discussed was not one resting in the grant of letters patent. Perhaps the distinction renders the Lorain decision entirely remote in the legal sense, from this controversy.

I am unwilling however to decide that question on a motion addressed to the pleadings. Its ultimate disposition can wait upon whatever the evidence discloses at the trial.

As to subds. (a) to (d) inclusive of this paragraph of the counterclaim, the motion is denied.

■ Subd. (e) is new. It alleges that "Plaintiff, together with S. C. Yeaton, have in bad faith selectively discriminated against the corporate defendant in the issue of licenses or agreements for licenses under United States Letters Patent under their control or ownership."

This is assumed to mean that the defendants have unsuccessfully sought to obtain one or more patent licenses from the plaintiff. Thus far the law has not declared for compulsory licensing; nor does the defendants' brief argue to the contrary. See Hartford-Empire Co. v. U. S., 323 U.S. 386, at page 432, 65 S.Ct. 373, at page 395, 89 L.Ed. 322.

As to subd. (e) the motion is granted.

■ *Thirty-fourth:* This paragraph is a repetition of the earlier one bearing the same number. It invokes the Robinson-Patman Act, §§ 13a and 15, but without factual allegations. It is obviously deficient, and the motion is granted.

■ *Thirty-fifth:* This is a new paragraph and purports to supply facts, i. e., that in May, 1954 the plaintiff submitted certain bids to the Signal Corps (U. S. Army?) in competition with the defendant, at less than the cost to manufacture the affected items, in bad faith and "to lessen and diminish competition."

Seemingly the defendants rely upon that portion of Section 13a which reads in part:

"It shall be unlawful for any person engaged in commerce, * * * to sell, or contract to sell, goods in

any part of the United States at prices lower than those exacted by said person elsewhere in the United States for the purpose of destroying competition, or eliminating a competitor in such part of the United States; or, to sell, or contract to sell, goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor."

The plaintiff urges that a sale to the United States Government does not fall within the scope of the Robinson-Patman Act, but cites no cases in which it has been held that sales to the Government fall outside the above quoted provision; and the contrary to that position seems to be stated in A. J. Goodman & Son v. United Lacquer Mfg. Corp., D.C., 81 F. Supp. 890, on page 893, from which the following quotation is pertinent:

"The complaint sets forth sufficient facts to show that plaintiff and defendant were competitors, since they were rivals for the business of selling lacquer to the State of New Hampshire. It describes the basic facts of an alleged course of conduct by defendant which might on further proof justify a finding that defendant acted for the purpose of eliminating plaintiff as a competitor. Nor can I hold, in the absence of further evidence, that the price of $1.75 was not unreasonably low. Consequently, I hold that on this point, the complaint properly alleges a violation of Sec. 13a."

A recent discussion of this statute will be found in Moore v. Mead's Fine Bread Co., 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145. This was a case in which the defendant was charged with having cut prices in intrastate transactions and driving competition out of business, and the court discusses the different prices quoted by the defendant in its intra as distinguished from its inter state business. In reversing a decree for the respondent, the court uses this language at page 120 of 348 U.S., at page 151 of 75 S.Ct.:

"It is, we think clear that Congress by the Clayton Act and Robinson-Patman Act barred the use of interstate business to destroy local business, outlawing the price cutting employed by respondent."

As to the right of a private litigant to recover damages under the quoted section, see Vance v. Safeway Stores, Inc., 10 Cir., 239 F.2d 144, at page 146.

Without unnecessarily prolonging this opinion, it will suffice to state that the defendants' amended pleading as to these challenged paragraphs cannot be held to be deficient as a matter of law, and consequently as to them the motion to dimiss as a counterclaim will be denied.

Thus far the effort has been made to deal with the proposed counterclaim as distinguished from the office of the pleading to set up defenses.

In that aspect of the proposed pleading, it is deficient in the following respects:

■ As to paragraph *Thirty-second,* the allegation is that the plaintiff and Yeaton and Newman "in the carrying out of the said conspiracy, have entered into a scheme or plan, the intent, tendency and inherent nature of which is to control and unduly restrict the sale of radar and microwave equipment in its flow through interstate commerce whereby the public interest is inevitably prejudiced."

The foregoing is not an adequate pleading to support testimony on the subject of public injury concerning which, in connection with an alleged breach of the anti-trust laws, a general allegation is not sufficient. Cf. Wilder Mfg. Co. v. Corn Products Refining Co., 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520. That case holds that a pleading must allege facts which the above paragraph completely fails to do.

See also, Kinnear-Weed Corp. v. Humble Oil & Refining Co., 5 Cir., 214 F.2d 891. That case states that a conclusion of the pleader is not sufficient in such matters.

The defendants rely upon certain language appearing in the opinion in Geor-

gia-Pacific Plywood Co. v. United States Plywood Corp., D.C., 139 F.Supp. 234. In that case an amendment was permitted of the same general nature, although stated in general language amounting to a conclusion; it was said that details might be secured by interrogatories and pretrial discovery.

That view seems to be at variance with a decision rendered in the same court, Baim & Blank, Inc., v. Warren-Connelly Co., D.C., 19 F.R.D. 108, on page 109, in which Judge Dawson states views to which I entirely subscribe. See also, National & Transcontinental Trading Corp. v. International General Electric Co., D.C., 15 F.R.D. 379.

The general subject of the essential allegations in such a pleading, was treated in the case of Glenn Coal Company v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885.

Tested by the foregoing, paragraph *Thirty-second* as proposed is insufficient as a pleading, and therefore the motion to strike it as a defense is granted.

Having in mind that the plaintiff has brought this cause for patent infringement, it is further to be observed that the proposed pleading fails to allege facts to relate the conduct of which the defendants complain, to the issues appropriate to an infringement suit. This subject was clearly expounded in Radio Corporation of America v. Hygrade Sylvania Corp., D.C., 10 F.Supp. 879.

The plaintiff calls attention to the extent to which this subject has received attention at the hands of the Department of Justice as shown in the "Report of the Attorney General's National Committee to Study the Anti-Trust Laws," (March 31, 1955), to which reference is hereby made.

It results from the foregoing that the plaintiff's motion with respect to the second amended answer and counterclaim, is granted, in that paragraphs *Twenty-seventh to Thirty-seventh,* inclusive, are stricken as a separate and distinct defense; paragraphs *Thirty-third* and *Thirty-fifth* will not be stricken as coun-

terclaims; in all other respects, the plaintiff's motion is granted.

Settle order.

## On Motion for Reargument.

This is a motion for reargument of the decision filed June 6, 1957 in this case, and is addressed to so much thereof as dealt with the counterclaims asserted in Paragraphs *Thirty-third* and *Thirty-fifth* of the Second Amended Answer.

The plaintiff properly criticizes the opinion in that as to the Peerless Instrument Co. the court assumed that it was a purchaser of the plaintiff's products. That assumption was based on the allegation that it and another were "substantial suppliers and sub-contractors of the plaintiff."

The error lay in thinking that the foregoing quotation meant that Peerless, being a sub-contractor of the plaintiff, probably in performing its sub-contracts, was a purchaser from the plaintiff.

It now appears that the contrary is the fact, and that the plaintiff was a purchaser from Peerless.

It is not seen that this changes the aspect of the characterized pleading, since a threat to withdraw purchases in order to induce Peerless not to do business with this defendant, would be no better in the legal sense, than a threat to discontinue sales to Peerless for the same reason.

On such a motion, it must be obvious that the court cannot undertake to decide whether the allegation is true or false, although the affidavits submitted on behalf of this motion are addressed to that proposition.

If the opinion of June 6 can be construed to suggest that sales to the Government can be thought to be subject to the provisions of the Robinson-Patman Act, a full disclaimer of any such intention is hereby made.

All that this court intended to suggest was that in ruling upon a motion to dismiss a given pleading, the court was not in a position to say that the motion

should be granted on the ground that the counterclaim, in all human probability could not be established.

Motion for reargument denied. Settle order.