**GENERAL UNITED COMPANY, d/b/a Honda of Gastonia, Plaintiff,**

v.

**AMERICAN HONDA MOTOR CO., INC., Defendant.**

**No. C–C–84–544–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 10, 1985.

James L. Roberts, Charlotte, N.C., for plaintiff.

A. Ward McKeithen, Robinson, Bradshaw & Hinson, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER was heard before the undersigned on September 9, 1985 at Charlotte, North Carolina upon the Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Plaintiff was represented by James L. Roberts, Attorney at Law. The Defendant was represented by A. Ward McKeithen, Attorney at Law.

After carefully considering the evidence presented, the legal memoranda, and the arguments of counsel, the Court enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

(1) The Defendant, American Honda Motor Company, Inc., is a California corporation which handles the distribution of Honda products in the United States.

(2) The Plaintiff, General United Company, d/b/a Honda of Gastonia, is a corporation organized and existing under the laws of the State of North Carolina. The Plaintiff was for several years a Honda motorcycle dealership in Gastonia, North Carolina pursuant to a series of standard Dealership Agreements with the Defendant.

(3) The latest Dealership Agreement entered into by the parties was dated February 1, 1980 and was in effect during the events at issue in this action. That Agreement provides:

> If Dealer is in default of payment for parts and accessories, then Dealer hereby gives Seller the right to withhold delivery of motorcycles or motorcycle parts and accessories until payment of such default is made.

Article VII, § 4.

(4) As of June 1, 1981, the Plaintiff had a parts account delinquency of $11,787.13. The Plaintiff had had a long history before that date of continuing delinquencies in its parts account payments to the Defendant and remained in default after June 1, 1981 until it went completely out of business on January 7, 1982.

(5) In June 1981, the Defendant advised the Plaintiff that it would not continue to sell or deliver motorcycles to the Plaintiff unless and until the Plaintiff paid its parts account delinquency. Thereafter the Plaintiff did not pay or remedy the delinquency, and the Defendant followed through on its warning that it would not sell or deliver motorcycles to the Plaintiff.

(6) Even if the Plaintiff had paid off its parts account delinquency, as of the end of August 1981 the Plaintiff did not have any line of credit with which to purchase new Honda motorcycles as required by the Motorcycle Sales Agreement.

(7) In January 1982, the Plaintiff ceased doing business, and its inventory and as-

sets were sold at a public foreclosure sale by the Small Business Administration. The Plaintiff had lost approximately thirty-eight thousand dollars ($38,000.00) after tax for the previous three fiscal years ending June 30, 1979, June 30, 1980, and June 30, 1981, and continued to lose money until its business closed in January 1982.

(8) During the summer and fall of 1981, the Defendant continued to sell motorcycles to at least one dealer in the Charlotte area that was several thousand dollars delinquent in the payment of its parts account, provided that the dealer pay cash for the motorcycles.

(9) The Plaintiff claims that the Defendant's refusal to sell it motorcycles because of its delinquency in its parts account while allowing other delinquent dealers to buy motorcycles was "in violation of the Clayton Act, and in violation of other Anti-Trust Statutes...." Amended Complaint, ¶ 7. It also alleges that the Defendant's discriminatory refusal to sell to it violated N.C.Gen.Stat. § 75–1.1.

(10) The Defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56 as to all of the Plaintiff's claims.

## CONCLUSIONS OF LAW

(1) This Court has jurisdiction of the subject matter pursuant to 28 U.S.C. § 1332.

(2) The Plaintiff has made a vague claim for some unspecified federal antitrust violation; other than its general mention of the Clayton Act, the Plaintiff does not allege in its Complaint which federal antitrust law or section thereof has been violated. After reviewing the various federal antitrust statutes in conjunction with the present record as a whole in the light most favorable to the Plaintiff, the Court concludes that none of the statutes addresses the situation at issue.

■ (3) Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, proscribes combinations, conspiracies, and contracts in restraint of trade. It does not deny a distributor the right to deal, or refuse to deal, with any customer, as long as it does so

independently. *Monsanto Co. v. Spray-Rite Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). Therefore, the essence of a Section 1 claim is concerted action. *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.*, 763 F.2d 604, 610 (4th Cir.1985).

■ Neither the Complaint nor the evidence presented to the Court in opposition to the Defendant's motion for summary judgment presents even a suggestion that the Defendant combined with any other distributors or dealers in its refusal to sell motorcycles to the Plaintiff. Since there exists no genuine issue of material fact concerning the independence of the action taken by the Defendant, summary judgment is appropriate as to any claim under Section 1 of the Sherman Act.

(4) Summary judgment is also appropriate as to any claim the Plaintiff may pursue under Section 2 of the Sherman Act, 15 U.S.C. § 2. Section 2 prohibits monopoly or attempt to monopolize. No evidence of either is present in this case.

■ (5) Section 2 of the Clayton Act, which is commonly known as the Robinson-Patman Act, 15 U.S.C. § 13, prohibits price discrimination. To establish a violation of the Robinson-Patman Act, a plaintiff must show that the seller made at least two actual sales to two different purchasers at different prices. *Black Gold, Ltd. v. Rockwool Industries, Inc.*, 729 F.2d 676, 682–83 (10th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 178, 83 L.Ed.2d 113 (1984); *L & L Oil Co. v. Murphy Oil Corp.*, 674 F.2d 1113, 1120 (5th Cir.1982). "When a seller refuses to sell to one buyer, the requisite price discrimination between two buyers is lacking." *Black Gold Ltd.*, 729 F.2d at 683.

■ Even if the Defendant's requirement that the Plaintiff pay the delinquency in its parts account were construed as an unfavorable capital condition on the purchase of motorcycles that other delinquent dealers did not have to meet, the record does not support a claim of price discrimination. The Plaintiff's Complaint is based solely on the Defendant's refusal to sell to the Plaintiff while continuing to sell to

other delinquent dealers and is therefore outside the scope of the Robinson-Patman Act.

(6) Sections 3, 7, and 8 of the Clayton Act, 15 U.S.C. §§ 14, 18, and 19, prohibit tying and exclusive dealing contracts, certain mergers and acquisitions, and interlocking directorates, respectively. There is obviously no genuine issue as to any material fact concerning any possible claim under these sections, as none of the enumerated activities are present in this case. Therefore, summary judgment is appropriate as to claims under the Clayton Act.

█ (7) The Plaintiff's final claim is that the Defendant's refusal to sell motorcycles to the Plaintiff while agreeing to sell to other delinquent dealers was an unfair trade practice in violation of N.C.Gen.Stat. § 75–1.1. That statute provides:

(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

*Id.* Under N.C.Gen.Stat. § 75–16, a person injured by a practice declared unfair under § 75–1.1 is entitled to treble damages.

(8) Whether a practice is unfair within the meaning of § 75–1.1 is a question of law for the Court to decide. *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975). The North Carolina Supreme Court has described unfair conduct under the statute as that which "offends established public policy ... [or] is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Johnson v. Phoenix Mutual Life Insurance Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980) (*citing Spiegel Inc. v. Federal Trade Commission*, 540 F.2d 287 (7th Cir.1976)). The North Carolina Court of Appeals has stated that it is "conduct 'which a court of equity would consider unfair.'" *Harrington Manufacturing Co., Inc. v. Powell Manufacturing Co., Inc.*, 38 N.C.App. 393, 400, 248 S.E.2d 739, 744 (1978) (*quoting Carolina Aniline & Extract Co. v. Ray*, 221 N.C. 269, 273, 20 S.E.2d 59, 61 (1942)). As noted by the Fourth Circuit, the North Carolina legislature must have intended that substantial aggravating circumstances

be present before any practice is deemed unfair under § 75–1.1, since it provided that any damages suffered by the victim are to be trebled. *United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985, 991 (4th Cir.), *cert. denied*, 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981).

(9) This Court noted above that the United States Supreme Court has recognized the right of a seller freely to exercise its independent discretion as to parties with whom it will deal. *Monsanto Co. v. Spray-Rite Corp., supra; Federal Trade Commission v. Raymond Bros.-Clark Co.*, 263 U.S. 565, 573, 44 S.Ct. 162, 164, 68 L.Ed. 448 (1924) (wholesaler's threat to cease doing business with plaintiff unless plaintiff stopped supplying another wholesaler held not to violate Federal Trade Commission Act). The Defendant's decision not to sell to the Plaintiff while continuing to sell to other delinquent dealers did not, therefore, offend any established public policy.

(10) The Court also does not believe that the Defendant's actions were unethical, oppressive, unscrupulous, or substantially injurious to consumers. The Defendant simply was exercising its business judgment as a creditor and a seller as to how and when it should invoke its contractual rights with each of its dealers, depending on the particular circumstances and dealer.

When a business relationship involves the extension of credit,

[i]t is obvious that differences in the borrower's financial strength, business experience, and many other factors bring about differences in the terms of credit, security required, guarantees, and other devices used by creditors....

*Craig v. Sun Oil Co.*, 515 F.2d 221, 224 (10th Cir.1975) (holding that discrimination in credit terms did not violate Robinson-Patman Act). The Plaintiff's own dismal financial situation no doubt brought about the difference in the "device" used by the Defendant to force payment of the parts account debt (*i.e.*, refusal to sell until the delinquency was cured). The Plaintiff's business had been losing money for three years and it had had a long history of delinquency in its parts account, finally to-

talling over ten thousand dollars at the time the Defendant invoked its right to withhold delivery of motorcycles under the contract. Indeed, Morton Herald, the Defendant's sales representative for all North Carolina Honda motorcycle dealerships, stated in his affidavit that no other dealership had a parts account delinquency or history of delinquency as serious as that of the Plaintiff as of May 1981.

(11) The Court concludes that, even if the Defendant did discriminate in its treatment of delinquent dealers, the Defendant's exercise of reasonable discretion in its business relationships does not constitute an unfair trade practice under N.C.Gen. Stat. § 75–1.1. The record reveals no "substantial aggravating circumstances" in the situation at issue that would justify the punishment of treble damages. Accordingly, summary judgment is appropriate as to the Plaintiff's § 75–1.1 claim.

(12) Any finding of fact which is determined also to be a conclusion of law is so deemed and any conclusion of law which is determined also to be a finding of fact is so deemed.

IT IS, THEREFORE, ORDERED that the Defendant's motion for summary judgment as to all of the Plaintiff's claims is GRANTED.